**Garland M. FITZPATRICK et al.**

v.

**J. Frederick BITZER, Chairman of the State Employees' Retirement Commission, et al.**

**Civ. No. 15492.**

United States District Court,
D. Connecticut.

Sept. 16, 1974.

Paul W. Orth, Hoppin, Carey & Powell, Hartford, Conn., for plaintiffs.

Sidney D. Giber, Asst. Atty. Gen. for State of Connecticut, Robert J. Killian, Atty. Gen., Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION

### CLARIE, Chief Judge.

This suit was brought as a class action by the named plaintiffs, in behalf of all "male" state employees or former state employees, who were members of the State Employees' Retirement System, under Chapter 66 of the Connecticut General Statutes. It not only asserted equal protection claims under the Four-

teenth Amendment to the Federal Constitution, but also statutory violations under the Civil Rights Act of 1871, 42 U.S.C. § 1983. The plaintiffs request the Court to grant both declaratory and injunctive relief against the Chairman of the State Employees' Retirement Commission, the State Treasurer and the State Comptroller, to prevent their alleged continued administration of what is claimed to be unlawful sexually discriminatory retirement provisions of the Connecticut State Employees' Retirement Act and more particularly § 5–162, § 5–163, and § 5–166 of the Connecticut General Statutes.

Jurisdiction of this suit exists under 28 U.S.C. §§ 1331, 1343(3) and (4), 2201, 2202, and 2281; and the action is specifically authorized under Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e–5(f)(3). Since injunctive relief restraining the enforcement of certain state statutes was requested, a three-judge constitutional court was convened, under 28 U.S.C. §§ 2281 and 2284. A hearing on the merits, scheduled before the three-judge court on April 27, 1973, was postponed at the request of plaintiffs' counsel, because at that time the General Assembly was reported to be favorably considering legislation, which would make this case moot. The plaintiffs thereafter amended their complaint on October 15, 1973, by adding a second count, alleging that the State Retirement Act, on its face and as applied, violates Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq., and more specifically Public Law No. 92–261, effective March 24, 1972. The plaintiffs also represented that this state law clearly violates the interpretive guidelines relating to pension fringe benefits as promulgated under 29 C.F.R. 1604.9 and 37 C.F.R. 6835 [1] by the Equal Employment Opportunities Commission, revised April 5, 1972.

The State Employees' Retirement Act grants to women employees having 25 or more years of state service, the right to

1. See Discussion of Law at p. 19–22.

retire with pension rights five years earlier than men with identical service qualifications; so that women may retire at age 50, while men are not permitted to retire until five years later, at age 55. The Act also contains provisions described as discriminatory rate differentials in favor of female employees over male employees, who have worked less than 25 years in the state service. These laws authorize reduced retirement benefits to employees, who separate from state employment before they are normally eligible to retire, based upon the aforesaid preferred age differentials.

After a full hearing on the merits, the Court finds that the State Employees' Retirement Act does violate Title VII of the Civil Rights Act of 1964, as amended, and the regulations appurtenant thereto, in that it invidiously discriminates in favor of women over men, as to the number of years of service eligibility and the computation of retirement benefits. The Court accordingly grants judgment for the plaintiffs on their prayer for equitable relief.

### Subject Background

This suit is sponsored by the Connecticut State Employees' Association, a non-profit organization, whose purpose primarily is to protect and promote the interests of all state employees. The parties stipulated in writing that the Association and its membership have approved the bringing of this action and that its news publication has in the past, and will in the future, apprise its members of its progress. They have also agreed that it is a true class action, and that the male plaintiffs are not in any way different from, unique, or not representative of other similarly situated male state employees, insofar as their retirement benefits and those of comparably situated female state employees are concerned.[2]

The State Employees' Association itself agreed to pay the court costs required for the bringing of this action, while the Connecticut Civil Liberties Union agreed to assume the responsibility for providing cooperating legal counsel at no expense to the plaintiffs. All of the plaintiffs are *male* state employees; four of them are currently employed and two are retired. Both of the aforesaid employee categories are comprised of participating members in the Connecticut State Employees' Retirement Fund. Three of the active employees have worked more than 25 years and desire to retire before reaching 55 years of age; the fourth has served more than 10 years, but less than 25 years and wishes to retire in the near future.

■ The plaintiffs' complaint as originally drawn, attacked the constitutionality of several sections of the State Retirement Act and requested that their enforcement be enjoined, insofar as the statutes related to the disparate treatment of retirement provisions and premised these claims on alleged violations of equal protection rights under the Federal Constitution. The Federal Equal Employment Opportunity Act was amended by Public Law No. 92-261, 86 Stat. 103, on March 24, 1972, so as to encompass state and local governments under its definition of the terms, "person, employer and employee," 42 U.S.C. § 2000e(a), (b) and (f). This change made it encumbent upon state and local governments to immediately reappraise their employment practices, to be certain that they conformed with the amended federal law and its supporting regulations. After the commencement of this action on December 11, 1972, the plaintiffs, in January, 1973, filed a class complaint with the Boston Regional Office of the Equal Employment Opportunity Commission of discrimination charges against the Connecticut State Employees' Retirement Commission. On September 14, 1973, that office issued to the plaintiffs a right to sue letter as the latter had requested. The Equal Employment Opportunity Act amendment made it obvious to the three-judge court,

---

2. Stipulation of Facts, filed Nov. 30, 1973.

that the application of the new law might well prove dispositive of the issues. For that reason, the Court remanded the case to the single district judge who convened it, so that he might consider the applicability of federal statutory law and thus dispose of the case on those grounds, without reaching the constitutional issues. It is now a well established principle of law that even "a three-judge court . . . [is] obliged to adjudicate [a] statutory claim in preference to deciding the original constitutional claim . . . ." Rosado v. Wyman, 397 U.S. 397, 402, 90 S.Ct. 1207, 1212, 25 L.Ed.2d 442 (1970); *see* also Wyman v. Rothstein, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d 218 (1970); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), and Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed. 2d 194 (1965).

Written stipulations of fact were executed by counsel; the first was filed November 30, 1973, and the supplement was filed February 6, 1974. Procedurally, counsel agreed therein that the amendment which added the second count, filed March 29, 1974,

"(a) . . . be treated as valid when originally filed or may be revalidated as of the date of the filing of this stipulation, (b) that it is not necessary for plaintiffs to file a new amendment at this time or commence a new civil action, and (c) that the Amendment already on file should be considered the civil action commenced by said plaintiffs, as authorized by the Attorney General in such letter [right to sue letter] of January 16, 1974." [3]

The plaintiffs' complaint alleged that the following provisions of the State Retirement Act constituted an invidious discrimination against male employees:

(a) Connecticut General Statute § 5–162, and more particularly:

"(i) Subsection (c)(1) which provides for the retirement of a member with 25 or more years of state service 'on or after the member's fifty-fifth birthday, if a man, or fiftieth birthday, if a woman."

"(ii) Subsection (d)(1) which provides for the retirement of a member with less than 25 years of state service if he meets the following conditions:

"(A) The member is a woman who has completed five years of state service and reached her sixty-fifth birthday;

"(B) The member is a woman who has completed ten years of state service and reached her fifty-fifth birthday;

"(C) The member is a man who has completed ten years of state service and reached his sixtieth birthday;' and subsection (d)(3) in which retirement income is computed on the basis of a table based on age and sex under which in effect a man must be five years older than a woman to receive equivalent benefits.

"(b) Connecticut General Statutes 5–163 on early retirement, especially subsection 3 [(c)], wherein a member 'after he has completed twenty-five years of state service but before he has reached his fifty-fifth birthday, if a man, or her fiftieth birthday, if a woman, shall be entitled to a retirement income.' "

"(c) Connecticut General Statute 5–166(a) which provides that a member who leaves state service before becoming eligible for retirement shall, under certain conditions, be eligible for retirement income on a reduced actuarial basis 'provided, if such member is a woman she shall be eligible upon reaching her fiftieth birthday and if a man, he shall be eligible upon reaching his fifty-fifth birthday."

The plaintiffs' complaint alleged that the foregoing provisions of state law, on their face and as applied by the defendants, violate Title VII of the Civil Rights

---

3. Supplemental Stipulation of Facts, filed Feb. 6, 1974 (Plaintiffs' Exhibit B).

Act of 1964, as amended, and the regulations adopted pursuant thereto, because they discriminate between men and women in regard to fringe benefits of employment.[4] They also represented that these provisions violate the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and the Federal Civil Rights Act of 1871, because they discriminate on the basis of sex as a condition or privilege of employment, so as to deprive the plaintiffs and those similarly situated of their rights, privileges, and immunities secured under said Constitution.

### Statutory History

Counsel for both parties have failed to bring to the Court's attention, any legislative history which might more fully explain the reasons why the General Assembly wrote into law this retirement age priority for the benefit of women. However, the Court is mindful that many private pension systems at that time contained similar provisions, which gave a preferred status to female employees. Historically, this is understandable when we read an 1872 decision of the United States Supreme Court, which considered women to have been ordained by the Creator to be the more dependent of the sexes and entitled to be sheltered from the rebuffs of life. That decision concluded that the State of Illinois in refusing to grant a license to a woman to practice law, had violated no provision of the Federal Constitution and explained its reasoning as follows:

"Man is, or should be, woman's protector and defender. The natural and proper timidity and delicacy which belongs to the female sex evidently unfits it for many of the occupations of civil life. The constitution of the family organization, which is founded in the divine ordinance, as well as in the nature of things, indicates the domestic sphere as that which properly belongs to the domain and functions of womanhood. The harmony, not to say identity, of interests and views which belong, or should belong, to the family institution is repugnant to the idea of a woman adopting a distinct and independent career from that of her husband.

.    .    .    .    .    .

"The paramount destiny and mission of woman are to fulfil the noble and benign offices of wife and mother. This is the law of the Creator." Bradwell v. State (Illinois), 83 U.S. (16 Wall.) 130, 141, 21 L.Ed. 442 (Dec. 1872).

That protective era has now passed. A new order prevails today where men and women stand side by side in the work force, performing like skills as equals in all occupational endeavors. It is only right that both sexes should be treated as equals in sharing the benefits of their productive efforts towards a better life.

The historical record of the present legislative act reveals that H.B. No. 117, was signed into law on May 8, 1919, and provided in relevant part:

"*Any person* who shall have been in the service of the State thirty years and shall have reached the age of sixty-five years, or any person who has served in any department of the State twenty-five or more years in the aggregate and has reached the age of seventy, may be retired by the board of control, and thereafter shall receive a salary equal to one-half his average salary for the five years next preceding such retirement    .    .    .."

It is of special interest to note that the first State Retirement Act provided for no preferred status, to any employee because of his or her gender; the granting of retirement was not then regarded as a right to be demanded by the employee, but a matter of discretion which rested solely with the State, and determined by the Board of Finance and Control. The term "employee" was classified as being "any person" and this description was

---

4. 42 U.S.C. § 2000e et seq.; 29 C.F.R. § 1604.9 (1972).

carried throughout the 1930 revision, as provided in Conn.Gen.Stat. § 170.

It was not until 1939 that the amended law, § 67e, introduced the preferred retirement status for women. It provided in relevant part as follows:

". . . or, being a female person, having reached the age of fifty, or being a male person, having reached the age of fifty-five . . .."

"*Any person* in the service of the state in an appointive position covered by this part, who, being a female person shall reach the age of sixty-five years, or being a male person shall reach the age of seventy years, shall be retired . . .."

This disparate treatment of eligibility for retirement was first built into the law in the 1939 Session and continues down to the present; it is more particularly embodied in the specific statutes now being challenged, Conn.Gen.Stat. §§ 5–162, 5–163, and 5–166.

An exception to the foregoing age retirement rules, applies to state policemen and correctional institution guards and instructors, who are permitted to retire on their own application or that of their Commissioner after 20 years of service and upon reaching their forty-seventh birthday. It is also of interest to note that § 29–3 defines the term policeman to include policewoman; so that there exists no age disparity under the retirement laws affecting members of the State Police Department.

*Statistical Facts Relevant to Plaintiffs' Status*

The parties have stipulated that as of July 31, 1973, the relevant factual findings pertaining to the administration of the state retirement laws as they apply to the plaintiffs are as follows:

| Plaintiff | Age | State Employment | Total Qualifying time for benefits | Normal Ret. Date or Rate | Normal Ret. Date if Woman |
|---|---|---|---|---|---|
| Fitzpatrick | 53 | 9/1/49 to date | 29 yrs. 4 mos. | 2/1/75 | 2/1/70 |
| Stein | 54 | 4/16/41 | 32 yrs. 3 mos. | 8/1/73 | 8/1/68 |
| Slocum | 51 | 11/17/41 | 31 yrs. 8 mos. | 11/1/76 | 11/1/71 |
| Elliot | 52 | Army Service 12/7/41–6/19/42 5/12/49–7/26/50 1/3/61 to date | 14 yrs. 4 mos. | 5/1/84 | 5/1/81 |
| Mathews | 67 | 4/15/47– 10/31/71 | 24 yrs. 8 mos. | 923.10 monthly | 935.63 |
| Covert | 64 | 6/14/26–9/24/26 12/20/26–9/23/27 6/4/28–9/21/28 3/1/49–7/25/50 11/3/58–5/31/72 | 16 yrs. 5 mos. | 305.74 monthly | 328.66 |

The plaintiffs, Fitzpatrick, Stein, Slocum and Elliot, have expressed a desire to retire in the immediate future, but find that they are ineligible to do so. However, if each were a female, he would have been eligible to have retired at age 50, at the following respective monthly benefits: $1,149.53; $1,043.27; $483.70, and $171.50.

The *normal retirement* rate schedule for *males* is when the benefit rate is 2% or more; 25 years or more of service at

age 55; 10 years, but less than 25 at age 65; 5 years but less than 10 at age 70. In comparison, the normal retirement age for a woman is when the benefit rate is 2% or more; 25 years or more of service at age 50; 10 years and less than 25 years at age 60; 5 years, but less than 10 at age 65.

The benefit rate schedule for early retirement provides monthly benefits equal to $\frac{1}{12}$ of rate, multiplied by the years of service, times the average of the three highest years of earnings. The variant in the male and female retirement is expressed in the rate table prescribed in § 5-162(d)(3) of the Connecticut General Statutes. That rate is determined by the years of service and the employee's age at retirement and is more specifically portrayed in the booklet "Connecticut State Employees' Retirement System, January 1972," attached to the filed stipulation as an appendix.

The monthly benefits calculated for each of the plaintiff-employees already retired, disclose a variance in monthly retirement benefits on the basis of sex. The benefits of the plaintiff Mathews are computed in the following manner: $\frac{1}{12}$ (.02 × 24$\frac{8}{12}$ × $22,455.30) equaling a monthly payment of $923.10; whereas, a comparable female employee's benefits would be computed by the formula: $\frac{1}{12}$ (.025 x 20 x $22,455.30) amounting to a monthly retirement benefit of $935.63. Similarly, the plaintiff Covert's calculation of monthly benefits would be: $\frac{1}{12}$ (.0186 x 16$\frac{5}{12}$ years x $12,013.36) amounting to monthly benefits of $305.74; whereas, a comparable female employee's benefits would be $\frac{1}{12}$ (.02 x 16$\frac{5}{12}$ years x $12,013.36) amounting to a monthly payment of $328.66. The parties have agreed that retirement benefits under the State Retirement Act may be properly described as "fringe benefits" within the meaning of Title VII of the Federal Civil Rights Act of 1964 and the EEOC Code of Regulations.

### Claims of the Parties

The plaintiffs direct their claims against the challenged state laws on federal statutory grounds aided by the supporting power of the most recent amendment to Title VII of the Equal Employment Opportunity Act, Public Law No. 92-261, effective March 24, 1972. Title 42 U.S.C. § 2000e defines an employer as a "person" engaged in an industry affecting commerce, who employs fifteen or more employees for a minimal stated period of time; and it defines the term "person" to include "state governments, governmental agencies, (and) political subdivisions." Thus, all state employees have now been brought by Congress under the protection of 42 U.S.C. § 2000e-2 (a). That federal law now makes it an "unlawful employment practice" for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." Title 42 U.S.C. § 2000e-5(f)(1) authorizes any aggrieved person to bring an action against his employer, if his grievance has not been resolved within 180 days after he has filed his complaint with the Equal Employment Opportunity Commission. The parties stipulated that all of the statutory prerequisites have been fully complied with here, so that the issues are properly before the Court. The secondary attack on discriminatory sex classifications in the state's retirement laws, addresses itself to the claim that these differences are unreasonable and arbitrary and do not have any fair or meaningful relation to the object of the legislation.

The defendants have baldly denied that the retirement laws impose any invidious discrimination on the basis of sex, so as to deprive the plaintiffs or those identifiable with their class, of equal protection under the federal constitution or the provisions of the Equal Employment Opportunity Act. 42 U.S.C. § 2000e-2(a) (2). They also assert that this suit is in reality a suit against the State of Connecticut and as such is barred by the Eleventh Amendment to the Federal Constitution. On the discrimination issue, the Attorney General has argued

that it is common knowledge, that women as a class, earn less than men; and that employment in governmental agencies, generally pays less than similar positions in private industry. He suggests that when the General Assembly originally established the retirement plan, it offered these preferred inducements to women, so that they would seek state employment, even though the wages were less than those paid in the private sector. The defendants would justify their position on this issue based upon the holding of the Second Circuit in Gruenwald v. Gardner, 390 F.2d 591, 592 (2d Cir. 1968), cert. denied sub nom. Gruenwald v. Cohen, 393 U.S. 982, 89 S.Ct. 456, 21 L.Ed.2d 445 (1968). In that case, the Court approved as being constitutional, a disparity in the computation of federal social security retirement benefits, where men and women had equal earnings, but based its finding upon the recognized differences in the attributes of men and women. The defendants claim that case determined not only the constitutional validity of the defendants' present posture, but that dicta supported the proposition that the State was not violating the Civil Rights Act of 1964. The case clearly held that different treatment for women, as a class, was constitutionally permissible, so long as the discrimination was not patently arbitrary and was reasonably related to its subject and societal interests.

## Discussion of Law

■■ There exists no threshold jurisdictional barrier to the Court's disposition of this case. While it is now a commonly accepted principle that the Eleventh Amendment to the Constitution will bar a suit for money damages in federal court against an unconsenting state, jurisdiction was recognized in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), to enjoin the acts of state officials, when they were sued individually and the complaint alleged that they were acting unconstitutionally or contrary to a federal law. Certainly, any determination that a state statute is void for obstructing a federal statute rests on the Supremacy Clause of the Federal Constitution.[5] This principle has been reaffirmed in Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) when the Court said:

"The Eleventh Amendment to the Constitution of the United States provides: 'The Judicial power of the United States shall not be construed to extend to any suit in law and equity, commenced or prosecuted against one of the United States by citizens of another State . . . .' It is well-established that the Amendment bars suit not only against the State when it is the named party but when it is the party in fact." . . .

. . . . . .

"However, since Ex parte Young [supra] it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law." 94 S.Ct. at 1687.

Congress proclaimed by law on March 24, 1972, that the federal right to equal opportunity in employment should be extended to include employees working for state and local governments. 42 U.S.C. § 2000e-2. State governments were charged with the duty to reformulate their thinking in this area and to avoid committing "unlawful employment practices," if such existed.

"Where employees in state institutions, not conducted for profit, have

5. Article VI, Cl. 2 provides:
   "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

such a relation to interstate commerce that national policy, of which Congress is the keeper, indicates that their status should be raised, Congress can act. And when Congress does act, it may place new or even enormous fiscal burdens on the States." Employees v. Missouri Public Health Dept., 411 U.S. 279, 284, 93 S.Ct. 1614, 1618, 36 L.Ed. 2d 251 (1974).

■ Under subchapter VI, § 2000e, Definitions, the law defines the statutory terms as follows:

"(a) The term 'person' includes one or more individuals, governments, governmental agencies, political subdivisions . . . ."

"(b) The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. . . ."

.    .    .    .    .    .

"(f) The term 'employee' means an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. *The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government,*

*governmental agency or political subdivision."* (emphasis added).

Clearly, the law requires that all state employees, except those specifically exempted (such as those elected to public office or their personal or policy staff of advisers) are subject to and protected by the discrimination prohibitions of the federal law.[6]

Section 2000e–2 provides:

"(a) It shall be an unlawful employment practice for an employer—

.    .    .    .    .    .

"(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin."

Supportive of the foregoing amendment the Equal Employment Opportunities Commission on April 5, 1972, revised its "Guidelines on Discrimination Because of Sex" which provide in relevant part:

*"Fringe Benefits:*

(a) 'Fringe benefits,' as used herein, includes medical, hospital, accident, life insurance and retirement benefits; profit sharing and bonus plans; leave; and other terms, conditions, and privileges of employment.

(b) It shall be unlawful employment practice for an employer to discriminate between men and women with regard to fringe benefits.

---

6. "The Constitution is as imperative in its prohibition of discrimination in state and local government employment as it is in barring discrimination in Federal jobs. The courts have consistently held that discrimination by state and local governments, including job discrimination, violates the Fourteenth Amendment and is prohibited. (footnote omitted).

.    .    .    .    .

"The Committee feels that it is an injustice to provide employees in the private sector with an administrative forum in which to redress their grievances while at the same time, denying a similar protection to the increasing number of state and local employees." House Report No. 92–238, Vol. 2, U.S.Code Cong. and Admin.News, p. 2137 at 2153–2154 (92nd Cong., 2d Sess.1972).

. . . . . .

(e) It shall not be a defense under Title VII to a charge of sex discrimination in benefits, that the cost of such benefits is greater with respect to one sex than the other.

(f) It shall be an unlawful employment practice for an employer to have a pension or retirement plan which establishes different optional or compulsory retirement ages based on sex or which differentiates in benefits on the basis of sex."

29 C.F.R. 1604.9 (1972).

The Court is required to look with great deference to these administrative interpretive guidelines established by the very agency charged with administering this law.

"The Equal Employment Opportunity Commission, having enforcement responsibility, has issued guidelines interpreting § 703(h) to permit only the use of job-related tests. The administrative interpretation of the Act by the enforcing agency is entitled to great deference. See, e. g. United States v. City of Chicago, 400 U.S. 8, 91 S.Ct. 18, 27 L.Ed.2d 9 (1970); Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Power Reactor Development Co. v. Electricians, 367 U.S. 396, 81 S.Ct. 1529, 6 L. Ed.2d 924 (1961). Since the Act and its legislative history support the Commission's construction, this affords good reason to treat the guidelines as expressing the will of Congress."

Griggs v. Duke Power Co., 401 U.S. 424, 433–434, 91 S.Ct. 849, 855, 28 L.Ed.2d 158 (1971).

The amended federal statute and these supporting guideline regulations make it obvious to the Court, that the Connecticut State Employees' Retirement Act treats men and women according to different benefit standards, in determining their retirement age and pension benefits. The Connecticut plan as presently written, strikes at the very principle, which the federal law prohibits, the

disparate treatment of men and women employees, because of their gender.

The Seventh Circuit Court of Appeals defined its interpretation of this law without equivocation, when it said:

". . . we read Title VII to include retirement plans as 'conditions of employment' just as they are similarly viewed under the National Labor Relations Act. Inland Steel Co. v. N.L.R.B., 170 F.2d 247, 7 Cir. 1948, cert. den. 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112. Title VII forbids any discrimination with respect to such conditions of employment. Furthermore, the Act proscribes classifications by employers '. . . which would tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex . . . .' Section 703(a)(2) [42 U.S.C. § 2000e–2(a)(2)]." Bartmess v. Drewrys U.S.A., Inc., 444 F.2d 1186, 1189 (7th Cir. 1971).

The same interpretation of Title VII was followed in Ugiansky v. Flynn and Emrich Company, 337 F.Supp. 807, 810 (D.Md.1972) where the Court said:

"This court believes that pension plans, absent a specific exclusion in the Act, are or may be part of the 'compensation, terms, conditions or privileges' of employment and therefore covered by Title VII, 42 U.S.C. § 2000e–2(a)(1)."

The Supreme Court had outlawed discrimination as to sex as an overall practice when it decided Phillips v. Martin Marietta Corp., 400 U.S. 542, 544, 91 S.Ct. 496, 27 L.Ed.2d 613 (1970) and stated that under the Civil Rights Act of 1964, persons of like qualifications must be given employment opportunities irrespective of their sex.

■ A plain reading of the present statute teaches us that retirement plans which treat men and women differently with respect to their ages of retirement are prohibited. The Fifth Circuit Court

of Appeals unanimously confirmed this principle in Peters v. Missouri-Pacific Railroad Co., 483 F.2d 490, 492 n. 3 (5th Cir. 1973) (en banc).

"We entertain no doubt that Congress intended Title VII to reach retirement plans as conditions of employment, just as such plans are viewed as employment conditions under the National Labor Relations Act . . .

"Retirement plans establishing different ages for retirement of male and female employees of one employer violate Title VII."

In a similar vein, the Seventh Circuit said:

"The scope of Section 703(a)(1) is not confined to explicit discriminations based 'solely' on sex. In forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." . . . .
Sprogis v. United Air Lines, Inc., 444 F.2d 1194, 1198 (7th Cir. 1971). (footnote omitted).

■ The Connecticut retirement plan constitutes an unlawful employment practice, because it discriminates between men and women with regard to employment fringe benefits and is therefore found by the Court to be illegal and in violation of federal statutory law.

### Remedies

The complaint asks that the Court, in addition to granting injunctive relief against continued prospective violations of the law, should assess money damages retroactively to July 2, 1965, when Title VII of the Civil Rights Act became law. An alternative proposal would award retroactive benefits to January 25, 1971, a date two years prior to the January 25, 1973 date when the plaintiffs first filed their complaint with the Equal Employment Opportunities Commission. They argue that they are entitled to the enforcement of the two-year back pay statute of limitations, 42 U.S.C. § 2000e–5(g), restricting the recovery of retroactive claims under the Act. The plaintiffs insist however, that in any event, they should at least receive benefits recalculated back to March 24, 1972, when the protective policy of the amendment as expressed in Title VII, was extended to include all employees in state government. They press their claim, that they are entitled to be reimbursed back to the time when the federal law first proclaimed as a national policy, that this type of discrimination must end; and only if the Court orders such restitution with their past benefits recomputed, can all victimized male employees be made financially whole.

The plaintiffs have also asked that this Court allow them a sum for reasonable attorneys' fees, under 42 U.S.C. § 2000e–5(k). They agree that the Court's granting of such a request is solely discretionary. The plaintiffs' counsel argues that this litigation is of sufficient public importance to justify the granting of such fees as part of the court costs to the prevailing party.

■ The total hours of legal preparation as a cooperating attorney for the American Civil Liberties Union amounted to 137.5 hours. A portion of this, 84.9 hours ($4,245.00) is attributable to the work of Attorney Orth, the chief counsel; 22.6 hours to his associate, Attorney Carey ($1,130.00); and 30 hours to a second associate, Attorney Priestly ($900.00). The affidavit submitted by the plaintiffs asserts that the reasonable charges for the legal services of the principals in his firm is billed at the rate of $50 per hour, while that of the associates is $30 per hour. The Court finds that while the counsel fees requested are fair and reasonable in amount, they are not allowable as a recoverable expense against the State.

### Law Re: Damages

■ The State Retirement Fund, § 5–156, provides for a separate trust fund into which is deposited employee

contributions and state appropriations, which are held in the custody of the State Treasurer. These funded assets comprise employee contributions, varying in amount from 2% to 5% of the salary, which percentage in turn is dependent upon whether or not the employee has elected social security coverage. The Retirement Commission is entrusted with the task of determining the State's contribution as computed on an actuarial basis, to meet the current benefit services, provided that State payments shall not be less than seventy-five per cent of total retirement income payments for each fiscal year commencing July 1, 1973. In 1972, pursuant to § 5–156(a), the General Assembly programmed a prospective forty-year amortization of unfunded past service liabilities, varying from 30% in 1971 to 100% in 1985. The major source of these funds is public funds and any deficiency must come from tax revenue. Any judicial determination of the plaintiffs' claims must recognize that any judgment, which would allow retroactive payments would have to come from the public treasury.

". . . [W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." Ford Co. v. Dept. of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L. Ed. 389 (1945).

"Although the Eleventh Amendment is not literally applicable since petitioners, who brought suit, are citizens of Missouri, it is established that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Employees v. Missouri Public Health Dept., 411 U.S. 279, 280, 93 S.Ct. 1614, 1616, 36 L.Ed. 2d 251 (1972).

The rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment. Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); Kennecott Copper Corp. v. Tax Commission, 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946).

▇ The issue of recovering money damages against a state was clearly resolved in the recent case of Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) where the United States Supreme Court held that the federal court was without jurisdiction to award a retroactive money judgment, in the absence of a waiver or without the State's consent, when such would have to be satisfied out of the general revenues of the State; and that this principle was applicable even though the award attempted to make equitable restitution of moneys previously illegally withheld. The plaintiffs here do not suggest that the State has waived the immunity provisions of the Eleventh Amendment. This amendment, therefore, still remains a jurisdictional barrier to the payment of the retroactive monetary relief requested.

In a similar application the Eleventh Amendment precludes the award of attorneys' fees. The State of Connecticut is an alter ego of the defendant Commission members and they have not waived the State's sovereign immunity defense. The award of attorneys' fees from state funds is tantamount to an award of money damages. While the amount sought in this case is not prohibitive, once the flood-gates are opened, adequate control no longer prevails. Statutory authority cannot be permitted to frustrate or pierce the Eleventh Amendment constitutional shield.

". . . the Eleventh Amendment prohibits the awarding of attorneys'

fees against unconsenting sovereign states." Jordon v. Gilligan, 500 F.2d 701, 709 (6th Cir. 1974); *cf.* Gates v. Collier, 489 F.2d 298 (5th Cir. 1973).

*See also,* Jordan v. Fusari, 496 F.2d 646, 651 (2nd Cir. 1974), where the Court found the State of Connecticut, in a different case, had waived the Eleventh Amendment, by its conduct in previously settling claims for back unemployment compensation benefits.

The Court finds no reason to discuss the applicability of the Equal Protection Clause of the Fourteenth Amendment, as it relates to discrimination because of sex. Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); Eisenstadt v. Baird, 405 U.S. 438, 92 S. Ct. 1029, 31 L.Ed.2d 349 (1972), and Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). The federal civil rights statute has adequately determined the issues raised.

The Court finds this to be a class action and that the plaintiffs are entitled to prospective injunctive relief from this date forward, so as to prevent the defendants and their successors from paying out moneys from the retirement fund or state moneys in respect to said fund, which discriminates against men on the basis of sex. The defendants are accordingly ordered to administer the State Employees' Retirement Act without unreasonable sex classifications unfavorable to men as they relate to retirement age and benefit computations; so that men will be eligible to retire at age 50 and receive the same treatment as similarly situated women. Nothing herein shall be construed to interfere with the State Legislature performing its constitutional function of freely determining public policy, as it pertains to deciding upon a uniform retirement age for all men and women employees of the State of Connecticut in the future, provided the same is carried out without discrimination as to age or benefits on the basis of sex.

The foregoing opinion shall constitute the findings of fact and conclusions of law required to be filed by the Court, pursuant to Rule 52(a), Fed.R.Civ.P.

The parties shall settle an appropriate order within ten (10) days. So ordered.