Albert A. LEWIS et al., Plaintiffs,

v.

James L. COWEN et al., Defendants.

Civ. A. No. 73–2876.

United States District Court,
E. D. Pennsylvania.

Oct. 11, 1977.

Raynes, McCarty & Binder, Philadelphia, Pa., for plaintiffs.

David W. Marston, U. S. Atty., Kenneth A. Ritchie, Asst. U. S. Atty., Eastern District of Pennsylvania, Philadelphia, Pa., for defendants.

Before ROSENN, Circuit Judge, and HIGGINBOTHAM and BECHTLE, District Judges.

## OPINION AND ORDER

HIGGINBOTHAM, District Judge.

### I.

*Introduction*

Plaintiff, a retired male railroad employee, claims that a former provision of the

Railroad Retirement Act, 45 U.S.C. § 228b(a) (hereafter § 228b(a)),[1] violates the equal protection component of the Fifth Amendment and is invalid on the ground that it was superseded by Title VII of the Civil Rights Act of 1964. § 228b(a) permitted women with thirty years' service to retire at age sixty with full benefits; however, men with thirty years' service receive reduced benefits if they retired between their sixtieth and sixty-fifth birthdays. For the third time in four years a court has been asked to, within this very lawsuit, declare unconstitutional the statute in issue. Each time before plaintiff lost and at his third time at bat his fate is no better.

Plaintiff instituted a class action seeking injunctive relief, retroactive and prospective retirement annuity benefits for those male employees with thirty years of service who received reduced annuities under § 228b(a).[2]

On April 21, 1975 defendant's motion for summary judgment was granted by the district judge who held that the relevant provision of the Railroad Retirement Act did not unconstitutionally discriminate against retired male railroad employees, was not superseded by Title VII and that the plaintiff did not raise a sufficiently substantial issue to warrant the convening of a three-judge court. *See* Memorandum Opinion, *Lewis v. Cowen,* Civil Action No. 73–2876 (E.D.Pa., filed April 21, 1975).[3] In an order and opinion filed March 5, 1976, the district court denied plaintiff's petition for reconsideration and vacation of the summary judgment. 417 F.Supp. 1047. An appeal was taken. In an unpublished opinion, the Court of the Appeals for the Third Circuit stated:

> . . . In a careful 49 page opinion the district court denied reconsideration, and this appeal was taken.

---

1. Act of July 31, 1946, ch. 709, § 205, 60 Stat. 727.

2. Plaintiff was granted a thirty day period, after the disposition of defendant's motion for summary judgment, to move for a determina-

tion of whether the case can be maintained as a class action. Order filed March 13, 1975, Civil Action No. 73–2876.

3. Neither plaintiff nor defendants petitioned for the convening of a three-judge court.

However much we might incline towards the district court's view of the merits of this case, we cannot agree that the constitutional claim presented was "insubstantial" as that term has been defined by the Supreme Court. *Goosby v. Osser,* 409 U.S. 512, [93 S.Ct. 854, 35 L.Ed.2d 36] (1973), reversing this court, 452 F.2d 39 (3d Cir. 1971), teaches that the lack of merit in a claim must be very clear indeed to warrant denial of a three-judge court when the case is otherwise within a three-judge court statute. Opinion filed January 21, 1977, Civil Action No. 76–1604. Consequently, the Court of Appeals vacated and remanded the case with directions that a three-judge court be convened.[4] Defendant's motion for summary judgment is now before the court for determination. In light of the Supreme Court's recent holding in *Califano v. Webster,* 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977), any doubt as to the validity of § 228b(a) is eliminated; and, therefore, defendant's motion for summary judgment must be again granted.

## II.

### Railroad Retirement Act

The Railroad Retirement Act is similar to the Social Security Act in that they are both federally-administered contributory systems designed to protect the worker and, under some provisions, his family. *See Kalina v. Railroad Retirement Board,* 541 F.2d 1204, 1207, n.3 (6th Cir. 1976), appeal, 431 U.S. 909, 97 S.Ct. 2164, 53 L.Ed.2d 220. There is an effort to keep the annuity benefits provided under the Railroad Retirement Act comparable to social security benefits.

"Historically, whenever social security benefits have been increased, railroad retirement benefits have also been increased comparably." 1973 U. S. Congressional and Administrative News, p. 1617. Because of the similarity between these benefit systems, there is no reason to doubt the applicability of case law regarding the Social Security Act to claims against the Railroad Retirement Act.[5]

## III.

### Equal Protection Claim

Plaintiff's ability to bring this claim under the Fifth Amendment is without question. The existence of an equal protection component to the Fifth Amendment's due process clause is well established. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Matthews v. de Castro,* 429 U.S. 181, 182, n.1, 97 S.Ct. 431, 432, n.1, 50 L.Ed.2d 389 (1976).

Plaintiff does not allege that § 228b(a) discriminates against women or has an adverse impact upon them. Thus, this case is not comparable to the circumstances of *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975), or *Califano v. Goldfarb,* 430 U.S. 199, 209–210, 97 S.Ct. 1021, 1028–1029, 51 L.Ed.2d 270 (1977), n.5, where the Court held certain provisions of the Social Security Act unconstitutional because they deprived female wage earners of the protections accorded to their male counterparts. However, plaintiff's action does come within the purview of *Califano v. Webster, supra,* in which the gender classification of the former § 215 of the Social Security Act, 42 U.S.C. § 415, provided, in effect, greater old-age benefits under the

---

4. We are aware that 28 U.S.C. § 2282 which required the convening of the three-judge court in this case was repealed by Public Law 94–381, 94th Cong. S. 537, Aug. 12, 1976. However, because § 7 of the repealing amendment made the act inapplicable to actions commenced on or before the date of enactment, this case which commenced in 1973 is within the purview of the now repealed 28 U.S.C. § 2282.

5. In *Califano v. Goldfarb,* 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977), the Court may

have indicated that the gender classification in the old-age benefit provisions of the Social Security Act would also be held unconstitutional by the Court under the Railroad Retirement Act. Of course, that provision, imposing a dependency requirement on husbands of covered wage earners, was held violative of the constitutional rights of female workers in that it denied them the protection accorded to male wage earners. Thus, the claim raised in Kalina, *supra,* is inapplicable in this case involving a significantly different provision.

Social Security Act to retired females than to their male counterparts. After analyzing the provision under the standard of review applicable to gender classifications, which was most clearly articulated in *Craig v. Boren,* 429 U.S 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), the court held § 215 constitutional.

The standard of review applicable here in determining if § 228b(a) is constitutional is whether the gender classification is substantially related to the achievement of important governmental objectives. *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397 (1976). A gender-based classification enacted for the purpose of reducing the disparity between the economic conditions of men and women caused by the historic discrimination against women has been recognized as an important governmental objective capable of withstanding scrutiny under equal protection analysis. *Califano v. Webster, supra; Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975); *Kahn v. Shevin,* 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974).

Defendant claims that § 228b(a) was enacted to redress the effects of past discrimination against women. However, in determining whether an asserted compensatory purpose is not a "mere recitation of a benign compensatory purpose," *Weinberger v. Wiesenfeld,* 420 U.S. 636, 648, 95 S.Ct. 1225, 1233, 43 L.Ed.2d 514 (1975), this court must inquire into the actual purpose underlying the sex-based classification presently at issue. In the legislative history of § 228b, this court finds a substantial basis for recognizing the remedial purposes of § 228b.

The most significant part of the legislative history of § 228b is the January 31, 1945 testimony of Murray W. Latimer, then Chairman of the Railroad Retirement Board, before the House Committee on Interstate and Foreign Commerce. In discussing the suggested amendment to § 228b of the Railroad Retirement Act, the precursor to the provision now at issue, Latimer stated:

[S]pecial provision for women is appropriate. There is much evidence that, despite the greater longevity of women as compared with men, their efficiency on jobs outside the home tends to become impaired at an earlier age than in the case of men. In its report for 1943, the Social Security Board stated that there was 'little doubt that the proportion of women unable to engage in regular employment at age 60 is larger than the proportion of men at age 65.'

Most pension systems of private employers, having any substantial number of women workers, make provision for retiring women at an earlier age than male employees. The Social Security Board has recommended that income benefits for women under the old-age and survivors' insurance system begin at 60. The provision in H.R. 1362 does not go as far as the recommendation of the Social Security Board; I think it an appropriately cautious step in the right direction.

Hearings on H.R. 1362 Before the Committee on Interstate and Foreign Commerce, 70th Congress., 1st Sess., pt. 1, at 50 (1945) (hereafter "Hearings"). Through the testimony of Chairman Latimer, the legislative history shows that the statute was based, in part, upon the finding that a greater proportion of women were unable to continue working past age sixty than men who could continue working past age sixty-five. Thus, retired female employees were to be provided full annuity benefits when they reached the age when female workers "normally cease to seek employment." Hearings, at 135–136.

The district judge, after surveying the legislative history of § 228b(a) concluded:

Congress' purpose in enacting § 228b was to decrease "the disparity between the economic capabilities of a man and a woman" employed in the railroad industry [citations omitted].

We agree with the district judge and find that the legislative history is sufficiently specific to reveal its remedial purpose. We cannot now resort to explicit legislative materials to show that Congress intended to

remedy the effects of past discrimination when it enacted the relevant provisions of Sec. 228b in 1946. Yet, to require such specificity from statutes enacted long before the development of modern equal protection analysis could render many of them needlessly unconstitutional.

Like the Supreme Court in *Kahn v. Shevin, supra,* we take note of available labor statistics which, in this case, show the presence of discrimination in the railroad industry. In reviewing these statistics, the district judge found:

Women were a strikingly small proportion of railroad employees. . . . Furthermore, the data demonstrated that the railroad industry had been no oasis in that desert of higher-paying jobs for women. During the year when Chairman Latimer testified, the data indicated that women were less than two tenths of one percent of the executives, officials and staff assistants, less than three percent of the professional assistants, and approximately two percent of the supervisors or clerks, even though they constituted approximately eight percent of the total work force. As recently as 1970, women were less than one and one-half percent of the executives, officials and staff assistants, and less than four percent of the supervisors and professionals. In addition, there was a fifteen to twenty percent wage differential between male and female employees in the railroad industry. [footnote and citation omitted].

Calculation of annuity payments has been based on the average monthly compensation of a railroad employee. The average monthly compensation for railroad employees who subsequently became annuitants was higher for male workers in every year for which such statistics were kept by the Railroad Retirement Board. Defendants' Supplemental Memorandum, at Appendix A.

417 F.Supp. at 1061, 1062.

After noting these realities we recognize the existence of discrimination in the railroad industry even though no explicit finding was made by Congress. In doing this, we are taking cognizance of the Supreme Court's statement in *Califano v. Webster,* 430 U.S. at 317, 97 S.Ct. at 1195.

"[w]hether from overt discrimination or from the socialization process of a male-dominated culture, the job market is inhospitable to the woman seeking any but the lowest paid jobs." *Kahn v. Shevin, supra,* 416 U.S. at 353, 94 S.Ct. at 1736. See generally id., at 353–354, and nn. 4–6, 94 S.Ct. at 1736–1737.

Even if we were not willing to recognize the existence of discrimination in the railroad industry at the time § 228b was enacted, the Congressional purpose of reducing economic disparity is, itself, an acceptable "important governmental objective." In fact, after reviewing the facts of *Kahn v. Shevin, supra,* and *Califano v. Webster, supra,* it is questionable that the Supreme Court makes any distinction between a finding of discrimination and one of economic disparity. For example, in *Califano v. Webster, supra,* the Court states:

Reduction of the disparity in economic condition between men and women caused by the long history of discrimination against women has been recognized as such an important governmental objective. 430 U.S. at 317, 97 S.Ct. at 1194.

Both *Kahn v. Shevin, supra,* and *Schlesinger v. Ballard, supra,* are cited as supporting this proposition. Yet, in *Kahn v. Shevin, supra,* there was no explicit finding of either past discrimination or a legislative intent to remedy such discrimination. The statute, allowing for a tax exemption for widows, was of the type which had been operative in Florida since 1885. Also, the Court looked at labor statistics post-1955 to show the problems of women in the labor market. Here, where there was no explicit legislative finding of past discrimination under the *Kahn v. Shevin, supra,* analysis as adopted by *Califano v. Webster, supra,* a finding of economic disparity is capable of withstanding scrutiny under equal protection analysis as an important governmental objective.

Plaintiff claims that § 228b(a) was enacted on an "erroneous belief" as to the em-

ployability of women after the age of sixty. Plaintiff's brief at 25. Yet, in support of this proposition he utilizes statistical evidence and expert testimony largely unrelated to the relevant economic conditions present and capable of being analyzed by Congress at the time § 228b(a) was enacted. This fact was pointedly addressed by the district judge:

> To refute the defendant's contention that men and women were not similarly situated, either in the railroad industry or in the total work force, plaintiff relies predominantly on statistics from an era 22 years after Chairman Latimer had testified and Congress had passed the statute in issue.

> . . . I cannot find that Congress committed a constitutional error when rejecting [plaintiff's expert] Dr. Miller's view of parity between men and women in the railroad industry. Fortunately for women today, the disparity is not as great as it was in 1945, but to assume that the millenium has been reached requires both naivete and obliviousness to data.

417 F.Supp. at 1062–1063.

Plaintiff also contends that § 228b(a) was, in fact, based upon outdated notions or assumptions about women. However, as we have found the purpose of § 228b(a) to be remedial in nature and an attempt to redress the economic conditions of women in the railroad industry, we cannot agree that the classification was based upon assumption "archaic and overbroad" generalizations. *Schlesinger v. Ballard,* 419 U.S. at 508, 95 S.Ct. 572. Nor do we find any evidence of "the role-typing society has long imposed" upon women, *Stanton v. Stanton,* 421 U.S. 7, 15, 95 S.Ct. 1373, 1378, 43 L.Ed.2d 688 (1975). As to the possibility that Congress could have made a casual assumption that women were the "weaker sex," one should look at a provision in the Railroad Unemployment Insurance Act which was amended by the same bill that amended § 228b. There, Congress provided for maternity benefits which would provide

income to the expectant mother for a period before and after the birth of the child in order to coincide with the national interest. "against . . . expectant mothers either to engage in employment practically up to the time of childbirth or to return quickly to employment after childbirth." Hearings, *supra* at 77. This testimony, again that of Chairman Latimer, revealed the intent to aid the expectant mother and provides an inference that Congress believed that the mother would eventually return to employment. Here again, Congress apparently looked to the individual needs and conditions of women in the industry rather than referring to any outdated notions or assumptions about women.

In recognition of the diminished economic capabilities of women in the railroad industry after age sixty, a statute enabling women to retire from the industry after age sixty with full benefits is "substantially related" to the remedial purposes of the provision. § 228b(a) was tailored to the "particular needs" of women in the industry and the distinctions were eliminated when no longer necessary. Act of July 10, 1973, Pub. L. No. 93–69, Title I, § 101, 87 Stat. 162. Because the purpose of § 228b(a) was *not* to generally address the past economic discrimination against women or to generally help female railroad employees, plaintiff cannot criticize the limited impact of the statute. Plaintiff's brief, at 23. Actually, the fact that the different treatment was *only* accorded to women who retired with thirty years service, without disability and between the ages of sixty and sixty-four attests to the statute's success in accomplishing its specific goals. Also, it is well established that Congress can act in selected areas, even where one might find a legitimate need elsewhere. *Jefferson v. Hackney,* 406 U.S. 535, 547, 92 S.Ct. 1724, 1731, 32 L.Ed.2d 285 (1972).

While we find the gender-based classification of § 228b(a) quite capable of withstanding the analysis mandated in *Craig v. Boren, supra,* we seriously doubt whether male and female employees in the railroad industry were similarly situated. Congress,

in enacting § 228b(a), could be said to have treated "different classes of persons in different ways;" and therefore, the statute is constitutional under traditional equal protection analysis. As Chief Justice Burger stated in the Court's opinion in *Reed v. Reed,* 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971):

> . . . this Court has consistently recognized .that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. [citations omitted].

Nor is the federal government denied this power under the Fifth Amendment.

The legislature may have concluded that women were dissimilar because they were less capable of engaging, in regular employment at the age of sixty than men at age sixty-five and that providing for a lower retirement age for women would tailor the benefit system to the particular needs of women who would otherwise receive less than their male counterparts. The legislative justification, similar to that made in *Schlesinger v. Ballard,*[6] *supra,* would be a sufficient basis for a variation in the treatment by the railroad industry of men and women who reach the age of sixty.

The legislative history of § 228b(a) shows that while the statute called for the different treatment of males and females, it was not deemed discriminatory as to retired male employees. Chairman Latimer testified:

> Because it fits, as far as it goes, the peculiar needs of women workers, *it can hardly be said to involve any element of discrimination in favor of women over men.* Hearings, *supra* at 50 (emphasis added).

Thus, Congress, in relying on reported facts descriptive of the *then* employment pattern of women, had a sufficient basis for enacting a statute to provide for different treatment of dissimilarly situated persons.

Congressional decisions regarding the distribution of funds under statutory social welfare schemes are entitled to deference. *Califano v. Goldfarb,* 430 U.S. 199, 209–210, 97 S.Ct. 1021, 1028–1029, 51 L.Ed.2d 270 (1977). While the use of gender classifications in these schemes is subject to constitutional attack under the equal protection component of the Fifth Amendment, in this case, plaintiff's claim that § 228b(a) is, as a matter of law, unconstitutional is without merit.

## IV.

### *Application of Title VII to § 228b*

The Railroad Retirement benefit system, a federally enacted social insurance program, is not equivalent to a pension plan; therefore, the benefit system is not subject to Title VII. Plaintiff cannot rely on cases involving ordinary pension or retirement plans to infer a claim under Title VII. *See Rosen v. Public Service Electric and Gas Co.* 477 F.2d 90 (3d Cir. 1973); *Bartmess v. Drewrys U.S.A., Inc.,* 444 F.2d 1186, *cert. denied,* 404 U.S. 939, 92 S.Ct. 274, 30 L.Ed.2d 252 (1971); *Fitzpatrick v. Bitzer,* 390 F.Supp. 278 (D.Conn.1974), *modified,* 519 F.2d 559 (2d Cir. 1975), *rev'd in part, aff'd in part,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

Moreover, this court does not agree with the plaintiff's contention that Title VII and the relevant provisions of the Railroad Retirement Act are incompatible. Plaintiff's brief at 27. As was stated by the district judge, there is no inconsistency between the statutory provisions. Both acts provide mechanisms for redressing the disparate conditions of victims of past discrimination. *Lewis v. Cohen,* 417 F.Supp. at 1066. Therefore, we cannot find that Title VII of the Civil Rights Act impliedly repealed the relevant provisions of § 228b.

---

**6.** In *Schlesinger v. Ballard, supra,* 419 U.S. at 508–509, 95 S.Ct. [572] at 577, the Supreme Court spoke of the possible legislative justification for the gender-based statute at issue there:

> Congress may thus quite rationally have believed that women line officers had less opportunity for promotion than did their male counterparts, and that a longer period of tenure for women officers would, therefore, be consistent with the goal to provide women officers with "fair and equitable career advancement programs."

## V.

After a review of all that has been said and written in this area, we are convinced that the judgment on the merits as expressed by the district court judge in his opinion of March 5, 1976, is still valid and it has been corroborated by the subsequent opinion of the Supreme Court in *Califano v. Webster, supra.*

We are not evaluating section 228b as if Congress were passing an act today to provide pensions for persons whose rights would accrue in the year 2000. Rather, we are analyzing a statute, passed in 1945, which offered some advantage to women who had limited options at that point in this country's history.

To read plaintiff's briefs and Dr. Miller's testimony, one would infer that the history of women in America, or at least in the railroad industry, has been one of total parity and equal opportunity and that the conclusion of Chairman Latimer in 1945 was a figment of wild imagination. But plaintiff's position is contrary to the pages of history of which the Supreme Court has so repeatedly spoken. We must recognize that the Supreme Court moved from in 1872 considering women as "naturally timid," "delicate," and "evidently unfit" for many of the occupations of civil life [7] to, in 1974, the Court categorizing past deprivations as either "overt discrimination" or "the socialization process of a male dominated culture." [8] If the Supreme Court's consciousness could be heightened and changed in a century, what made it impermissible for the Congress in 1945 to grasp the impact of those disparities which the Supreme Court has found and so eloquently described. Section 228b has since been amended to take account of what Congress considers to be a different era with heightened options for women.

Over two years ago, the United States Supreme Court held in *Weinberger v. Wies-*

*enfeld, supra,* 420 U.S. at 653, 95 S.Ct. at 1236, 43 L.Ed.2d at 528 (emphasis added), that a gender-based classification violated the Due Process Clause *unless* it can "be explained as *an attempt* (by Congress) *to provide for the special problems of women."* § 228b of the Railroad Retirement Act is a demonstration that Congress took such "special problems" into consideration.

Defendant's motion for summary judgment is granted; plaintiff's motion for summary judgment is denied.[9]

ROSENN, Circuit Judge, concurring.

I concur with the majority in all respects that section 228b(a) of the Railroad Retirement Act was not superseded by Title VII of the Civil Rights Act of 1964. This holding is supported by Congress' later explicit repeal of section 228, subsequent to the passage of the Civil Rights Act. I also concur with the majority that section 228 is constitutional, but wish to state separately my reasons.

The majority and I start with the same basic standard of review for equal protection challenges to legislation classified on the basis of gender. *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), teaches that, "[t]o withstand constitutional challenge, . . . classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." 429 U.S. at 197, 97 S.Ct. at 457. The majority holds that section 228 "was enacted for the purpose of reducing the disparity between the economic conditions of men and women caused by the historic discrimination against women," and that this purpose should be held constitutional as serving important governmental objectives. *See Califano v. Webster,* 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977). I believe, however, that the legislative history demonstrates

---

7. *Bradwell v. Illinois,* 83 U.S. 130, 139, 16 Wall. 130, 21 L.Ed. 442 (1873).

8. *Kahn v. Shevin,* 416 U.S. at 353, 94 S.Ct. 1734.

9. Although technically plaintiff did not file a motion for summary judgment, he requested that such motion be granted in his favor. Memorandum, filed October 29, 1974, Civil Action No. 73–2876.

552

that section 228 was not passed to remedy any past economic discrimination against women, but rather was enacted because Congress believed at that time that women would leave the work force earlier than men. Because section 228 is "benign" in purpose and effect on women and the discrimination against men is incidental to the overall important governmental objectives, I would hold the statute constitutional.

The legislative history demonstrates that section 228 was passed to provide retirement benefits to women at an earlier age than men because studies undertaken at the time of its passage and Congressional testimony indicated that women left the work force earlier than men. Whether women, in fact, left the work force because of discrimination or any other factor, or whether the studies and testimony were accurate, is irrelevant to our review of the statute, for Congress could have fairly and legitimately believed such evidence and, in response, properly provided benefits for women unavailable to men. As pointed out by the majority, that Congress has now repealed section 228 only indicates that once the underlying basis for the law disappeared, Congress terminated the law.

This case thus falls squarely within the rule of *Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975), and *Kahn v. Shevin,* 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974), which rejected challenges by men of statutes enacted to redress perceived imbalances in the opportunities provided for men and women. Unlike *Weinberger v. Weisenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975), in which a gender-based generalization perniciously denigrated the efforts and earnings of women thereby depriving them of the protection which men received as a result of their employment, this statute serves a benign purpose and is reasonably designed to further Congressional policy to reduce the adverse effects on women caused by their earlier separation than men from the work force. Coupled with the district court's finding of historical discrimination against women in the railroad profession, I believe the statute is constitutional.