Hyman G. **SILBOWITZ** and Shirley H. Silbowitz, Plaintiffs,

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.**

Hyman G. **SILBOWITZ,** Plaintiff,

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.**

Nos. 74–924–Civ–CF, 74–925–Civ–CF.

United State's District Court, S. D. Florida.

June 20, 1975.

Bruce S. Rogow, Miami, Fla., for plaintiffs.

William Z. Elliott, Social Security Div., Washington, D. C., Robert W. Rust, U. S. Atty., Robert L. Andrews, Asst. U. S. Atty., Miami, Fla., for defendant.

### OPINION AND FINAL JUDGMENT GRANTING SUMMARY JUDG-MENT TO PLAINTIFFS

FULTON, Chief Judge.

These consolidated cases are before the Court on cross-motions for summary judgment. The plaintiff in No. 74–925, Hyman G. Silbowitz, seeks review of an administrative denial of Social Security benefits, alleging that the denial was based upon an unconstitutional provision of the Social Security Act, Section 202 (c)(1)(C); 42 U.S.C. § 402(c)(1)(C). In No. 74–924, Hyman G. Silbowitz and his wife, Shirley, jointly seek to declare unconstitutional the same statutory provision. Both suits claim that the provision violates the equal protection guarantees of the Fifth Amendment.

The provision in question requires that a husband seeking Social Security insurance benefits through his wife's benefits must show that he received at least one-half of his support from her. However, a woman is entitled to Wife's insurance benefits of one-half the primary amount received by her husband, without any need to show support. Social Security Act Section 202(b)(1) and (2); 42 U.S.C. § 402 (b)(1) and (2). The statutory scheme therefore creates a one-sided dependency test based upon gender which results in the granting of benefits to non-dependent women while withholding them from non-dependent men.

It is that statutory scheme which the plaintiffs attack. They argue that the discrimination is based solely upon sex, is not justified by any compelling state interest and lacks even a rational basis.

For the reasons set forth below, the Court finds that no rational basis does exist for the statutory discrimination and enters this final judgment granting summary judgment to the plaintiffs.

### JURISDICTION

The parties have stipulated, and the Court finds, that jurisdiction in No. 74–925, the action to review the Social Security decision is based upon 42 U.S.C. § 405(g). In No. 74–924, the action brought by Mr. and Mrs. Silbowitz, the parties stipulated and the Court finds that jurisdiction rests upon 28 U.S.C. §§ 1331, 1346(a)(2) and 1361. A single judge has authority to hear and decide these cases because the parties seek only to declare unconstitutional, not enjoin, a statute of the United States. *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 153–155, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

### FINDINGS OF FACT

The material facts are undisputed and are the same in both cases. On March 13, 1968, Shirley H. Silbowitz applied for Retirement Insurance Benefits under the Social Security Act. In June, 1968, she was granted benefits, based upon her prior Social Security contributions. Her initial award was $49.80 per month By April, 1975, it had grown to $91.70 per month.

Hyman G. Silbowitz retired from Federal Government employment in 1969. During the course of his employment he was not covered by the Social Security Act. On May 23, 1973, he applied for Husbands insurance benefits under 42 U.S.C. § 402(c)(1). He met all of the requirements for Husbands insurance benefits except that he admittedly was not receiving at least one-half of his support from his wife at time she became entitled to retirement benefits. That pre-requisite is set forth in 42 U.S.C. § 402(c)(1)(C). The relevant portion of the statutory scheme states:

Husband's insurance benefits

(c)(1) The huband (as defined in section 416(f) of this title) of an individual entitled to old-age or dis-

ability insurance benefits, if such husband—

(A) has filed application for husband's insurance benefits,

(B) has attained age of 62,

(C) was receiving at least one-half of his support, as determined in accordance with regulations prescribed by the Secretary, from such individual—

\* \* \* \* \* \*

(ii) . . . at the time she became entitled to such benefits,

\* \* \* \* \* \*

shall be entitled to a husband's insurance benefit for each month, beginning with the first month after August 1950 in which he becomes so entitled to such insurance benefits.

Because of Mr. Silbowitz's failure to meet the dependency requirement his application for Husband's insurance benefits was denied. He prosecuted an unsuccessful appeal through the Social Security Administrative processes and then instituted the within actions.

### CONCLUSIONS OF LAW

█ Equal protection claims under the Fifth Amendment are decided in the same way that Fourteenth Amendment equal protection claims are resolved. *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (March 19, 1975). If sex is a "suspect classification," then the statutory scheme can be justified only if the Government shows a compelling interest for the gender based classification. Cf. *Graham v. Richardson,* 403 U.S. 365, 372, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). If it is not a suspect classification, then the test is whether there is a rational basis for the distinction. *Jefferson v. Hackney,* 406 U.S. 535, 546, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972).

█ In *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), four Justices agreed that a classification similar to the one at issue here is "inherently suspect and must therefore be subjected to close judicial scrutiny." 411 U.S. at 682, 93 S.Ct. at 1768. Justice Stewart found the discrimination to be "invidious" 411 U.S. at 691, 93 S.Ct. 1764 and the Chief Justice and Justices Powell and Blackmun found it unnecessary to go beyond a rational basis test in determining that the challenged statutes were unconstitutional. 411 U.S. at 691–692, 93 S.Ct. 1764. Since a majority of the Supreme Court has not unequivocally made sex a "suspect" classification, this Court will not do so but will instead adhere to the more traditional standard of rational basis. Under that test, as applied by the Supreme Court in *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (March, 1975), which struck down a companion provision to the one *sub judice,* the Court finds § 402(c)(1)(C) to be violative of the Fifth Amendment.

Shirley Silbowitz worked and contributed a portion of her earnings to Social Security payments. The purpose of those payments, indeed the major purpose of the Social Security Act, is to assure contributors and their families a tolerable standard of living in their old age. *Weinberger v. Wiesenfeld,* 647 U.S. ——, 95 S.Ct. at 1233 n.14. Thus Mrs. Silbowitz's contributions were buying protection for her family: herself and her husband. Had it been Mr. Silbowitz who was buying that protection, his wife would have been entitled to a payment of an additional one-half of his primary benefit, whether or not she was dependent upon him for more than one-half of her support. The additional requirement of support imposed by § 402(c)(1)(C) upon Mr. Silbowitz results in a diminution of the family benefits based solely upon the sex of the applicant. It makes the Social Security benefits purchased by women less valuable than those purchased by men. In *Wiesenfeld* the Court, contending with a companion section of the Act which provided benefits

to widows and not widowers with minor children, said:

> Section 402(g) clearly operates as did the statutes invalidated by our judgment in *Frontiero,* to deprive women of protection for their families which men receive as a result of their employment. . . . [I]n this case social security taxes were deducted from Paula's salary during the years in which she worked. Thus she not only failed to receive for her family the same protection which a similarly situated male worker would have received, but she was also deprived of her own earnings in order to contribute to the fund out of which benefits would be paid to others. Since the Constitution forbids the gender-based differentiation premised upon assumptions as to dependency made in the statutes before us in *Frontiero,* the Constitution also forbids the gender based differentiation that results in the efforts of women workers required to pay social security taxes producing less protection for their families than is produced by the efforts of men.

> *Id.,* 95 S.Ct. at 1232.

Those statements have equal application to the Silbowitzs' claims. In *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) certain statutes gave the wife of a male serviceman automatic dependent's benefits. A husband of a servicewoman could receive those benefits only if she proved that she provided more than one-half of her husband's support. *Wiesenfeld* set forth the Supreme Court's response to that classification:

> The Court held that the statutory scheme violated the right to equal protection secured by the Fifth Amendment. *Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. [572] at 572, 42 L.Ed. 2d 610 (1975) explained: " In * * * *Frontiero* the challenged [classification] based on sex [was] premised on overbroad generalizations that could not be tolerated under the Constitution . . . [T]he assumption . .

was that female spouses of servicemen would normally be dependent upon their husbands, while male spouses of servicewomen would not." 419 U.S. at 507, 95 S.Ct. at 577.

*Id.* 420 U.S. 643, 95 S.Ct. at 1230–1231.

The Court went on to call the similar generalization made by § 402(g) "archaic and overbroad" and pointed out:

> . . . that in view of the large percentage of married women working (41.5% in 1971) the presumption of complete dependency of wives upon husbands has little relationship to present reality. In the same vein, *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) observed that current statistics bely "the presumed role in the home" of contemporary women. 419 U.S. 534, n.17, 95 S.Ct. at 700.

Section 402(c)(1)(C) is the product of an identical stereotype: all women are dependent upon their husbands for their support. Thus, under § 402(b) all otherwise qualified wives of wage earners will receive benefits, irrespective of their dependency. Husbands are disqualified unless they are dependent. The discrimination is not related to family needs. Women who had no need of their husband's income receive benefits and enlarge the fund available to support husband and wife in their old age. Similarly situated husbands are denied benefits and the amounts available to meet the needs of those husbands and wives are less. Identically situated people are accorded different treatment solely on the basis of their sex.

Like the statutes in *Frontiero* and *Wiesenfeld,* § 402(c)(1)(C), " '[b]y providing dissimilar treatment for men and women who are . . . similarly situated, the challenged section violates the [Due Process] Clause' *Reed v. Reed,* 404 U.S. 71, 77, 92 S.Ct. 251, 254, 30 L.Ed. 2d 225 (1971)." *Weinberger v. Wiesenfeld,* 420 U.S. 653, 95 S.Ct. at 1236.

█ The defendant has contended that the statutory scheme is consistent

with the Act's intention to provide Social Security benefits to those with the greatest need and to allocate fiscal resources to those with the greatest need, citing *Geduldig v. Aiello*, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974). It is obvious that the statutes (§§ 402(b) and 402(c)(1)(C)) do not accomplish that purpose. Wealthy wives become entitled to benefits regardless of their dependency. Economically independent wives receive benefits without regard to their need. Indeed, if the public fisc is the concern, then a rational statute would require both male and female spouses to show dependency. The defendant's reliance upon *Geduldig*, is misplaced. While that case recognized the allocation of resources as a legitimate state interest, it did so in the context of a claim that women should be entitled to California state disability insurance benefits for pregnancy. In this case Mrs. Silbowitz is not seeking a benefit which, by its nature, is limited to women. Unlike the plaintiff in *Geduldig* she, as a covered worker, has paid for a benefit which a male would receive. The conservation of fiscal resources cannot be accomplished "by drawing invidious classifications." *Miller v. Laird*, 349 F.Supp. 1034, 1046 (3 judge ct. D.C.1972); *Diaz v. Weinberger*, 361 F.Supp. 1, 11 (3 judge ct., S.D.Fla.1973) (Set for reargument in the Supreme Court, 420 U.S. 959, 95 S.Ct. 1346, 43 L.Ed.2d 436.)

■ Therefore it is apparent that the actual purpose of the blanket grant of benefits to wives and not to husbands is based upon administrative convenience. Instead of deciding who is dependent, the legislation presumes the stereotype that all women are dependent and this avoids the need to make individual determinations. As a result, this challenge to § 402(c)(1)(C) is governed by *Frontiero v. Richardson, supra,* where it was conceded that the statutes served "no purpose other than 'mere administrative convenience'." 411 U.S. at 688, 93 S.Ct. at 1771. The Supreme Court refused to accept that purpose as a justification for

gender based discrimination and the same result is compelled here.

This Court's conclusion is supported by data which reflects that the role of women in the work force overcomes any stereotype of dependency and by a continuing governmental recognition that sex based discrimination serves no rational purpose.

### A. The Stereotype

The stereotypic view of the economic roles of men and women reflected by § 402 does not correspond with reality for millions of persons in the United States. In April, 1971, approximately 32 million women, 42.7% of all women 16 years of age or older, were in the labor force, compared with 28.9% in March, 1940. U. S. Bureau of Labor Statistics, Dept. of Labor, Employment and Earnings 34–35 (May 1971). By 1973, more than 33 million women were in the labor force; of those women, 19.25 million, or 58.5% of working women, were married and living with their husbands. U. S. Women's Bureau, Dept. of Labor, Why Women Work 1 (rev. ed. June 1973). This is almost twice the rate of 1940. U. S. Women's Bureau, Dept. of Labor, Bull. No. 294, 1969 Handbook on Women Workers 39 (1969). From 1960 to 1970, nearly half of the increase in the labor force was accounted for by married women. Waldman, Changes in the Labor Force Activity of Women, 93 Monthly Labor Rev. June 1970, 10, 11. And in recent years, married women have made up the largest portion of the annual increase in the civilian labor force. Waldman & Young, Marital and Family Characteristics of Workers, 94 Monthly Labor Rev. 46 (March 1971). Married women of all ages are increasing their rate of labor force participation while other groups are not. A. Ferriss, Indicators of Trends in the Status of American Women 103 (1971). In well over 40% of families where both spouses were present, both were employed. *Id.* at 95. Of women who work, the number of wives in the labor force with working husbands has

been increasing at a faster rate than the number of working wives with husbands who are not employed. *Ibid.*

Moreover, despite the discrimination against women workers still characteristic of the labor market, many married women earn more than their husbands. The Census Bureau reports that in 1970, wives earned more than husbands in 3.2 million or 7.4% of American families. Persons by Family Characteristics, PC–24B, Table 14. The 1970 Census also revealed that women accounted for two-thirds of the increase in total employment in the 1960's and for half or more of the gain in certain jobs, ranging from bookkeeping to bartending. See Occupation by Industry, PC–7C, 1970.

It is thus beyond debate that many millions of married women earn enough to cover at least half of their own living expenses. Such women would not qualify for benefits if the dependency test found in § 402(c)(1)(C) applied to them. Here, as was the case in *Frontiero,* a dependency test applicable to men but not to women cannot be justified as a reasonable "economy." Plainly, no money is saved by paying women without regard to their dependency.

B. Congressional Equalization of Federal Benefits

In December, 1971, Congress amended Title 5 of the United States Code "to provide equality of treatment for married women Federal employees with respect to [veteran's] preference eligible employment benefits, cost-of-living allowances in foreign areas, and regulations concerning marital status generally." 1971 U.S. Code Cong. and Admin.News, Vol. 2, p. 2131. This legislation, covering all employees of the Federal government except members of the uniformed services, added the following subparagraph to 5 U.S.C. § 7152:

(c) Notwithstanding any other provision of law, any provision of law providing a benefit to a male Federal employee or to his spouse or family shall be deemed to provide the same benefit to a female Federal employee or to her spouse or family.

The subsection provision had the following effects: (a) It equalized the tests under 5 U.S.C. § 8133 for payment of death benefits to widows and widowers of federal employees dying from injury sustained in the performance of duty. Previously, widows were entitled to benefits if they were "living with or dependent for support on the decedent at the time of his death or living apart for reasonable cause or because of desertion." 5 U.S.C. § 8101(6). A widower, however, was entitled to benefits only if, "because of physical or mental disability, (he) was wholly dependent for support on the employee at the time of her death." 5 U.S.C. § 8101(11); (b) It equalized the tests under 5 U.S.C. § 8110 for payment of augmented compensation to spouses of disabled federal employees. Previously, a wife was eligible for augmented compensation if she lived in the same household as the employee or received regular contributions from him, or if he was under court order to contribute to her support. A husband was eligible for augmented compensation only if he was wholly dependent on the employee for support because of physical or mental disability.

In January, 1971, Congress amended 5 U.S.C. § 8341 which defines persons qualified for Federal Civil Service survivor's annuities. A surviving widow qualified automatically, but a surviving widower qualified only if he was incapable of self-support because of mental or physical disability and received more than half of his support from his wife. The amendment gave widowers the same automatic qualification as widows. The House Committee Report states the reasons for the amendment:

In the Committee's judgment, the present provision is discriminatory in that it runs counter to the facts of current-day living, whereby the women's earnings are significant in supporting the family and maintaining its stan-

dards of living. Accordingly, the bill removes the dependency requirements applicable to surviving widowers of female employees, thus according them the same treatment accorded widows of deceased male employees. 1970 U.S. Code Cong. & Admin.News, Vol. III, p. 5934.

In December, 1971, Congress amended 5 U.S.C. § 2108, which defines persons eligible for veterans preference in the federal civil service. Previously, the "unmarried widow," but not the unmarried widower, of a veteran, and "the wife," but not the husband, of "a service-connected disabled veteran" meeting certain other requirements were eligible. The amendment made widowers and husbands eligible under the same conditions as widows and wives.

In the same act, Congress amended 5 U.S.C. § 5924, which provides cost of living allowances to dependents of federal employees living in a foreign area. The allowance, previously payable to "[the employee's] wife or his dependents, or both," was made payable to "the employee's spouse or dependents, or both."

In October, 1972, Congress amended 38 U.S.C. § 102(b) which defines the term "dependent" for the purpose of determining the amount of education assistance allowance armed forces veterans are eligible to receive. A veteran with dependents as defined, is eligible for a substantially higher allowance. Section 102(b) previously provided that the wife of a male veteran was automatically classified as a dependent while the husband of a female veteran was classified as dependent only if he "is incapable of self-maintenance and is permanently incapable of self-support due to mental or physical disability . . . ." The amendment redefines "dependent" to include all husbands of eligible female veterans without regard to incapacity or dependency. And on July 9, 1973, 37 U.S.C. § 401 was amended to eliminate the differential at issue in *Frontiero*.

Before amendment, the provisions noted above, like the statute at issue in this case, imposed a test of actual dependency for husbands, but authorized benefits for wives, regardless of dependency. The change in each case was to extend to husbands the automatic benefits already enjoyed by wives. The "administrative convenience" of prior arrangements was rejected as a justification for differentials in benefits. Rather, the prior arrangements were recognized as discriminatory and inconsistent with the facts of current-day living.

C. Federal Prohibitions Against Private and State Discrimination in the Distribution of Benefits.

The discrimination caused by 42 U.S. C. § 402(c)(1)(C) stands in contrast to the firm national commitment to eradicate differentials of this kind in all spheres of employment, private as well as public. Sex as a means to determine employment related benefits has been declared unlawful by Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. § 2000e et seq. A state social insurance system embodying the 42 U.S. C. § 402 differentials would be impermissible in light of Title VII's unequivocal requirement of equal treatment.

Sex Discrimination Guidelines issued by the Equal Employment Opportunity Commission pursuant to Title VII, 29 C. F.R. §§ 1604.1–1604.10, provide:

> It shall be an unlawful employment practice for an employer to make available benefits for the wives and families of male employees where the same benefits are not made available for the husbands and families of female employees; . . .

29 C.F.R. § 1604.9(d)

The Guidelines, issued in 1972, are applicable to private as well as public employment. They explicitly proscribe differential treatment of men and women of the kind at issue in the case at bar. Moreover, they reflect consistent administrative and judicial interpretation prior to the time the Guidelines formally is-

sued. For example in 1969, the Equal Employment Opportunity Commission found reasonable cause to believe that Title VII was violated by a death benefit plan providing an automatic pension for widows of male employees, but no pension for widowers of female employees unless physically or mentally incapable of self-support. "Title VII of the Civil Rights Act of 1964," the Commission stated, "is intended to protect *individuals* from the penalizing effects of . . . presumptions based on the collective characteristics of a sexual group." EEOC Decisions, Case No. YNY–9–034, CCH Emp. Practices Guide para. 6050 (June 16, 1969). For court confirmation of the underlying principle, see *Rosen v. Public Service Elec. & Gas Co.*, 477 F.2d 90 (3d. Cir. 1973) (Title VII violated by pension arrangement allowing women to retire earlier on full pension).

The Equal Pay Act, 29 U.S.C. § 206 (d), has also been interpreted to prohibit the kind of sex based classification at issue here. The Wage and Hour Division of the Department of Labor has ruled that insurance plans pursuant to which the employer pays the cost of insurance premiums for family coverage for married male employees, but pays the cost of family coverage for married female employees only if they are actually the heads of their families, violate the Act. W & H Opinion Letter No. 425, CCH Emp. Practices Guide par. 1208.52 (Feb. 11, 1966).

Recently, the United States Commission on Civil Rights identified the dependency test challenged here as a "blatant area of sex discrimination." Toward Elimination of Sex-Based Differentials in the Social Security System, Statement of the U. S. Commission on Civil Rights at 9–11 (December, 1974). Even the Defendant has seemingly agreed in other contexts. See U. S. Dept. of Health, Education and Welfare, Higher Education Guidelines at 13 (October, 1972), and the newly issued regulations for implementation of Title IX of the Education Amendments of 1972, 40 Fed.Reg. 24143–24144, 45 C.F.R. § 86.56 (June 4, 1975) which prohibits receipients of federal funds from withholding from the spouse of a female wage earner any benefits provided to the spouse of a male wage earner.

■ The foregoing discussion confirms that the gender classification incorporated by 42 U.S.C. § 402(c)(1)(C) reflects restrictive and out dated sex role stereotypes that no longer accord with reality for a large and growing portion of the population. In the face of that, the defendant makes his final argument: that the challenged classification "recognizes and seeks to remedy the unfortunate economic plight of women . . ." and therefore meets the test of rationality set forth in *Kahn v. Shevin*, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974). That argument attempts to justify past discrimination by perpetuating that discrimination in the future. Because women have suffered an unfortunate economic plight they must be subjected to the indignity of seeing their future contributions to Social Security purchase less coverage than a similarly situated man's. *Kahn v. Shevin*, certainly does support that result.

D. *Kahn v. Shevin*, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974).

In Kahn the Florida statute in question gave all widows an annual property tax exemption. Widowers were denied similar benefits. The Supreme Court upheld the classification saying:

There can be no dispute that the financial difficulties confronting the lone woman in Florida or in any other State exceed those facing the man.

94 S.Ct. at 1736.

■ *Kahn* turns upon the Court's acceptance that the generalization regarding the need of surviving widows is reasonable. But that does not mean that a generalization regarding a living husband and wife claiming Social Security benefits is equally rational. In the latter

situation, it is a family need that is of concern. Since one of the goals of the Social Security system, as stated by the Supreme Court, is "social adequacy, which assures to all contributors and their families a tolerable standard of living," *Weinberger v. Wiesenfeld*, 95 S. Ct. at 1231, n. 11, it becomes clear that *Kahn* cannot control this case. There may be merit in giving widows a tax benefit because they were dependent on their husbands, but there is no merit in giving one family less than another, solely because the covered wage earner was a woman and not a man.

The Supreme Court plainly rejected the argument that the defendant now makes when it said that the gender based generalizations recognized in *Kahn* ("men are more likely than women to be the primary supporters of their spouses") though not without empirical support:

> cannot suffice to justify the denigration of the efforts of women who do work and whose earnings contribute significantly to their families' support. *Weinberger v. Wiesenfeld*, 95 S.Ct. at 1231–1232.

Justice Powell, in his concurring opinion, joined by the Chief Justice said:

> The statutory scheme therefore impermissibly discriminates against a female wage earner because it provides her family less protection than it provides that of a male wage earner, even though the family needs may be identical. I find no legitimate governmental interest that supports this gender classification.
> 95 S.Ct. at 1236.

Notwithstanding all of the defendant's attempts to clothe this statute with good intentions, one cannot escape the conclusion that *Wiesenfeld* and not *Kahn* controls this case. Therefore the gross gender generalizations cannot be justified in a case which involves contributory payments made by a wage earner.

## CONCLUSION

Because no legitimate governmental interest supports the gender based classification imposed by 42 U.S.C. § 402(c)(1)(C), the Court declares that the statute violates the Fifth Amendment of the Constitution of the United States.

In case number 74–924, the Court hereby enters a Final Judgment for the plaintiffs, Hyman G. and Shirley H. Silbowitz, granting their motion for summary judgment and declaring 42 U.S.C. § 402(c)(1)(C) unconstitutional.

In case number 74–925, the Court hereby enters a Final Judgment for the plaintiff Hyman G. Silbowitz, granting his motion for summary judgment, and declaring 42 U.S.C. § 402(c)(1)(C) unconstitutional and reversing the decision of the defendant Secretary of Health, Education and Welfare which denied benefits to Hyman G. Silbowitz under 42 U.S.C. § 402(c)(1)(C). The case is remanded to the defendant for a determination of the amount of benefits due to the plaintiff since the date of his application and for an award of attorneys fees as provided by 42 U.S.C. § 406.