**William C. MOSS and Lenore R. Moss, Individually and on behalf of all other persons similarly situated, Plaintiffs,**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.**

**No. 74–721–Civ–T–H.**

United States District Court, M. D. Florida, Tampa Division.

Jan. 15, 1976.

---

Larry Helm Spalding, Sarasota, Fla., for plaintiffs.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Terry A. Smiljanich, Asst. U. S. Atty., Tampa, Fla., William Z. Elliott, Dept. of Justice, Washington, D. C., for defendant.

## ORDER

Before RONEY, Circuit Judge, and HODGES and REED, District Judges.

HODGES, District Judge.

Plaintiffs, William and Lenore Moss, husband and wife, challenge for themselves and members of their class the constitutionality of § 202(c) of the Social Security Act,[1] and seek to restrain its enforcement. Due to the nature of the action a three-judge district court was convened. 28 U.S.C. § 2282. The case was heard upon cross motions for summary judgment and upon the Secretary's motion for dissolution of the three-judge court.[2]

Subsequent to the convening of this three-judge court, the Supreme Court made a definitive pronouncement of the jurisdictional basis for district court review of Social Security actions in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Therefore, before proceeding to the merits the Court must determine whether *Salfi* requires that this Court be dissolved.[3]

In *Salfi* the plaintiffs challenged various sections of the Social Security Act,[4] arguing that they contravened the due process clause of the Fifth Amendment. Predicating its jurisdiction on 28 U.S.C.

---

1. 42 U.S.C. § 402(c) which provides derivative "husband's benefits."

2. At oral argument held September 12, 1975, counsel for Plaintiffs withdrew the request for certification of a class action in light of *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975).

3. Since jurisdiction is for the Court to decide, not for the parties to confer or withhold, the Court feels constrained to make an independent determination of this question notwithstanding Plaintiffs' counsel's apparent concession at oral argument that this Court could dissolve itself under *Salfi*.

4. The contested provisions were 42 U.S.C. § 416(c)(5) and (e)(2), which preclude an insured's widow and stepchildren from receiving benefits unless their relationships with the wage earner existed at least nine months prior to his death.

§ 1331, a three-judge court granted injunctive relief in favor of the plaintiffs and the class they represented. On appeal, the Supreme Court reversed the district court's jurisdictional finding. The suit could not be maintained under 28 U.S.C. § 1331 because it was an " 'action' seeking 'to recover on [a Social Security] claim,' " and thus withdrawn from federal question jurisdiction by § 205(h) of the Social Security Act, 42 U.S.C. § 405(h). 95 S.Ct. at 2464–65. Consequently, the sole basis for the district court's jurisdiction was 42 U.S.C. § 405(g), the jurisdictional grant contained in the Social Security Act; and because § 405(g) makes an adverse determination by the Secretary a prerequisite to suit, the Supreme Court also held that the district court's jurisdiction extended only to the named plaintiffs and not to members of their class. *Id.* at 2465–2466.

 Since the Court is unable to find any meaningful distinction between this action and *Salfi,* jurisdiction must be predicated solely on 42 U.S.C. § 405(g). It follows that a three-judge court is proper only if the jurisdictional grant of § 405(g), which limits the Court to "affirming, modifying, or reversing the decision of the Secretary," can be construed to permit the Court to issue "an interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution," the relief required to trigger application of 28 U.S.C. § 2282.[5] Further, since *Salfi* mandates that any relief which this court might afford could extend only to Mr. Moss, the precise question is whether 28 U.S.C. § 2282 contemplates injunctive relief[6] that benefits only the named plaintiff.

With respect to this question the decision in *Flemming v. Nestor,* 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960) is dispositive. In that case the plaintiff challenged the constitutionality of § 202(n) of the Social Security Act, 42 U.S.C. § 402(n), but did not seek relief for anyone other than himself. Jurisdiction in the district court was predicated on 42 U.S.C. § 405(g). In response to the question of whether the case should have been decided by a three-judge court, the Supreme Court answered in the negative because the decision would not interdict the operation of an entire statutory scheme. 363 U.S. at 607–608. 80 S.Ct. at 1370–1371.

Thus, taken together, *Salfi* and *Flemming* mandate the conclusion that this cause is not appropriate for disposition by a three-judge court. *Salfi* restricts the scope of the decision to the named Plaintiff, Mr. Moss, and *Flemming* teaches that relief of such limited scope, even if granted on the basis of constitutional infirmity, does not require a three-judge district court.

As a practical matter, by limiting the Court's jurisdiction to the named Plaintiff, *Salfi* has effectively converted Mr. Moss's injunctive prayer into a request for declaratory relief, *see Escofil v. Commissioner,* 376 F.Supp. 521, 523 (E.D.Pa. 1974); and it is clear that a three-judge court is not required to grant a declaratory judgment. *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *Mitchell v. Donovan,* 398 U.S. 427, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970); *Sellers v. Board of Regents,* 432 F.2d 493, 498 (9th Cir. 1970), *cert. denied,* 401 U.S. 981, 91 S.Ct. 1194, 28 L.Ed.2d 333 (1971). Moreover, this action does not present the risk that prompted Congress to adopt the three-

5. In *Salfi* the Supreme Court noted that its decision cast doubt upon the necessity of a three-judge court, but it declined to decide the question. *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 2466 n. 8, 45 L.Ed.2d 522 (1975).

6. Since Mr. Moss admits that he does not meet the support requirement of 42 U.S.C. § 402(c), a reversal of the Secretary's decision denying him benefits would necessarily require a decla-ration that the support requirement is unconstitutional and a directive that the Secretary refrain from applying it to Mr. Moss. Such relief would enjoin the enforcement of an Act of Congress on constitutional grounds, and provides the basis for the argument that the relief contemplated by 28 U.S.C. § 2282 can be accorded within the jurisdictional grant of 42 U.S.C. § 405(g).

judge court mechanism which was "enacted to prevent a single federal judge from being able to paralyze totally the operation of an entire statutory scheme . . . by issuance of a broad injunctive order." *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 154, 83 S.Ct. 554, 560, 9 L.Ed.2d 644 (1963).

■ The case thus merits application of the general rule that 28 U.S.C. § 2282 is to be narrowly construed so as to avoid employing the special and extraordinary procedures incident to a three-judge court, with their attendant burdens on the Federal Judicial system, for a purpose other than the one they were enacted to serve. See *Mitchell v. Donovan,* 398 U.S. 427, 431, 90 S.Ct. 1763, 1765, 26 L.Ed.2d 378 (1970); *Goldstein v. Cox,* 396 U.S. 471, 478, 90 S.Ct. 671, 675, 24 L.Ed.2d 663 (1970); *Phillips v. United States,* 312 U.S. 246, 250–251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941); *Escofil v. Commissioner,* 376 F.Supp. 521, 523 (E.D. Pa.1974); *Rosa v. Gill,* 309 F.Supp. 1332, 1335–1336 (D.P.R.1969). Accordingly, it is

Ordered and adjudged that Defendant's motion to dissolve the three-judge court is hereby granted, and the cause is remanded to the convening district judge for decision on the merits.

## CROSS–MOTIONS FOR SUMMARY JUDGMENT

HODGES, District Judge.

Although a three-judge court was convened pursuant to 28 U.S.C. § 2282 *et seq.,* that Court has now been dissolved for lack of jurisdiction. The case remains pending, however, and is now ripe for decision on the parties' cross motions for summary judgment.[1]

Plaintiffs, William and Lenore Moss, both of whom are over 65 years of age, have been married since 1935. Lenore Moss is a fully insured individual under the Social Security Act and has been receiving old age insurance benefits since 1972. As a federal government employee William Moss paid no Social Security tax and accrued no Social Security benefits in his own right. He applied in 1973 for the derivative "husband's benefits" provided by § 202(c) of the Social Security Act, 42 U.S.C. § 402(c), but his claim was denied at all administrative levels for failure to meet the support or dependency requirement of § 202(c)(1)(C)

## THE STATUTORY SCHEME

Section 202(c) of the Act, 42 U.S.C. § 402(c), provides derivative "husband's benefits" to a male claimant who can prove, among other things, that he has received at least one-half of his support from his wife during certain specified periods of time. Section 202(b) of the Act, 42 U.S.C. § 402(b), the parallel provision governing "wife's benefits," contains no support or dependency requirement. Thus, a man who satisfies all the prerequisites of § 202(c) except the support requirement is denied derivative benefits while an identically situated woman receives them. Conversely, under the same circumstances, the maximum potential return generated by Social Security contributions is greater for covered male workers than for their identically situated female counterparts.

## THE CLAIM

Plaintiffs assert that the due process clause of the Fifth Amendment protects against a denial by the federal government of equal protection under law, and that the foregoing statutory scheme contravenes this equal protection guarantee because the gender-based distinction made by the statute does not bear a sufficiently close nexus to any valid governmental interest. They ask the Court to remedy this defect by "requiring application of 42 U.S.C. § 402(b) and (c) in a nondiscriminatory manner," suggesting

---

1. Oral argument before the three-judge panel was held on September 12, 1975. Counsel have stipulated that no genuine issue of material fact remains to be litigated, and independent examination of the record has revealed none.

that appropriate relief would be to enjoin the Secretary from denying "husband's benefits" for failure to meet the support requirement of § 202(c)(1)(C), and to order payment of benefits to Mr. Moss.

## CONSTITUTIONALITY OF THE STATUTORY SCHEME

 The parties have expended an enormous amount of effort debating the proper standard to be applied in judging the constitutionality of this legislative classification. Weaving his way through numerous Supreme Court decisions,[2] the Secretary urges that the traditional "rational basis" test should be employed. Plaintiffs, on the other hand, take the position that the Secretary must show a "compelling state interest" in support of the statute because sex is a "suspect" classification. However, the only Supreme Court authority for Plaintiffs' conclusion is a four-justice plurality opinion in *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); and in a later decision a majority of the Court indicated that they have not as yet found sex to be a "suspect" basis for legislative classification.[3]

Hesitant to take a step which the Supreme Court has not, the Court is of the view that something less than the "compelling state interest" test should be applied in this case. In determining the proper standard, the precise problem—gender-based differentiation in the Social Security field—must be kept firmly in mind. While social assistance provides the context in which the issue is presented, it is sex that provides the basis of the classification. Thus, several decisions cited by the Secretary[4] are unpersuasive because, although relating to the social welfare context, they did not involve a classification based on sex. The common thread running through the other decisions upon which the Secretary relies is the repeated reference to *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Significantly, the most recent of these decisions[5] found *Reed,* controlling; and, in *Reed,* the Court said:

"A classification 'must be reasonable, not arbitrary, and must rest upon

2. *Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971) (upholding provision of the Social Security Act reducing benefits to reflect duplicative workmen's compensation payments); *Flemming v. Nestor,* 363 U.S. 693, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960) (holding that Social Security Act provision terminating benefits to aliens upon deportation does not deny due process); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1971) (holding that a Maryland public welfare regulation placing a ceiling of $250.00 per month on A.F.D.C. benefits regardless of family size does not deny equal protection); *Jefferson v. Hackney,* 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972) (holding that Texas system of welfare allocation providing a lesser percent of need to A.F.D.C. recipients than to other welfare beneficiaries does not deny equal protection); *Kahn v. Shevin,* 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974) (holding that a Florida statute providing certain benefits to widows but not to widowers does not deny equal protection); *Gedulig v. Aiello,* 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974) (upholding a California disability benefit program excluding pregnancy from compensable "disabilities" against an equal protection challenge); *Stanton v. Stanton,* 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975)

(Utah statute making the age of majority 21 for males and 18 for females denies equal protection); *Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975) (upholding a navy regulation allowing women 13 years to "make grade", but men only 10 years, against equal protection challenge); *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (holding that a Social Security Act provision which requires widow and stepchild to prove a nine month relationship with deceased wage earner as a condition to benefits does not contravene Fifth Amendment's equal protection guarantee); *Weinberger v. Weisenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975).

3. "We find it unnecessary in this case to decide whether a classification based on sex is inherently suspect." *Stanton v. Stanton,* 421 U.S. 7, 13, 95 S.Ct. 1373, 1377, 43 L.Ed.2d 688 (1975).

4. *Richardson v. Belcher, Flemming v. Nestor, Dandridge v. Williams, Weinberger v. Salfi, Jefferson v. Hackney,* and *Gedulig v. Aiello, supra,* n. 3.

5. *Stanton v. Stanton,* 421 U.S. 7, 13, 95 S.Ct. 1373, 1377, 43 L.Ed.2d 688 (1975).

some ground of difference having a *fair and substantial relation* to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'" (404 U.S. at 76, 92 S.Ct. at 254.) (Emphasis supplied.) The Court is persuaded that this is the proper standard to be applied in this case. Accordingly, in order for the statutory scheme to withstand constitutional scrutiny, the Secretary must show that the gender-based distinction "fairly and substantially" fosters a valid governmental purpose.

Plaintiffs' major weapons against the statute are the Supreme Court decisions in *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) and *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975). *Frontiero* involved a statutory scheme which permitted male military personnel to automatically claim their wives as dependents, but required a female member of the service to prove that she furnished at least one-half of her husband's support as a prerequisite to claiming him as a dependent. The Court held that this gender-based distinction contravened the equal protection guarantee embodied in the due process clause of the Fifth Amendment. A more recent Supreme Court decision, *Schlesinger v. Ballard,* 419 U.S. 498, 506, 95 S.Ct. 572, 577, 42 L.Ed.2d 610 (1975), explains *Frontiero* to hold that "different treatment of men and women . . . based solely upon considerations of administrative convenience . . . [is] constitutionally invalid."

In *Wiesenfeld,* the Supreme Court applied the *Frontiero* rationale in the Social Security context. The Court held that 42 U.S.C. § 402(g), providing derivative benefits to widows but not widowers caring for children of a deceased wage earner, "clearly operates, as did the statutes invalidated by our judgment in

*Frontiero,* to deprive women of protection for their families which men receive as a result of their employment." 420 U.S. at 645, 95 S.Ct. at 1232.

Since this case presents a statutory scheme virtually identical to the one condemned by *Frontiero* in a context to which, per *Wiesenfeld,* the *Frontiero* rationale applies, it would seem that the *Frontiero* holding controls; and, indeed, at least three other courts have already considered this precise issue and have uniformly reached that same conclusion. *Jablon v. Secretary of HEW,* 399 F.Supp. 118 (D.Md.1975) (three judge court); *Coffin v. Secretary of HEW,* 400 F.Supp. 953 (D.D.C.1975) (three judge court); *Silbowitz v. Secretary of HEW,* 397 F.Supp. 862 (S.D.Fla.1975).

Despite the persuasive force of these recent decisions, the Secretary advances a number of skillfully refined contentions designed to overcome them. It is sufficient to note here, however, that each of these arguments is predicated upon one of two premises which share a common fallacy. The premises are (1) that the statutory classification is over-inclusive, rather than underinclusive; and (2) that the statutory presumption of female dependency fosters a valid governmental interest in rectifying past economic discrimination against women.[6]

The fallacy inherent in these contentions, and in the various conclusions the Secretary would draw from them, lies in the fact that each is based upon a view of the statute which is myopically restricted to the perspective of derivative *beneficiaries.* While it is true in one sense that the gender-based distinction favors women in general, and may thus be characterized as an overinclusive classification resulting from a "prophylactic" presumption of female dependency, it is equally apparent that the statute is underinclusive from the standpoint of female *wage earners* because the support

---

**6.** Specifically, it is said that the purpose of the statute is to aid those who are dependent upon a wage earner, and the gender-based distinction does not penalize any beneficiary who is in fact dependent. It merely enlarges the re- cipient class through application of a prophylactic presumption of female dependency justified by past economic discrimination against women.

requirement of § 202(c)(1)(C) places a restriction upon the derivative claims of their husbands that is not imposed upon the wives of male wage earners. As a consequence, the supposedly prophylactic nature of the presumption of female dependency operates in fact to the disadvantage of the *working* wife with respect to the family protection generated by her earnings, and when applied in this setting it actually causes and perpetuates the same vice it was purportedly designed in part to rectify—past economic discrimination against women wage earners. It cannot be said, therefore, that this scheme "fairly and substantially" fosters that valid governmental purpose. Rather, the only discernible justification for the gender-based distinction in this instance is one of administrative convenience and, under *Frontiero,* that is simply not enough to sustain it against an equal protection challenge. The scheme of the statute is unconstitutional. *Jablon, Coffin* and *Silbowitz, supra.*

### THE REMEDY

Although Plaintiffs' complaint sought broad declaratory and injunctive relief, it has already been determined (by the order dissolving the three judge court) that § 405(g) of the Act effectively limits the jurisdiction of this Court to the entry of an order "affirming, modifying, or reversing the decision of the Secretary" as it pertains to the individual claim of Mr. Moss. Thus, having decided that the gender-based distinction drawn by the statute cannot withstand constitutional scrutiny, it would seem that nothing remains to be done except to enter an order reversing the Secretary and requiring that Mr. Moss be paid the benefits for which he applied. Indeed, that is precisely the result reached by the Courts in *Jablon, Coffin* and *Silbowitz.*

■ It is important to recognize, however, that the constitutional defect of the statutory scheme arises out of the juxtaposition of §§ 202(b) and 202(c). The requirements of either section, standing alone, could be applied with constitutional impunity to all persons claiming spouse's benefits. The Court has merely determined that both cannot be simultaneously applied under the Fifth Amendment guarantee of equal protection. The present posture of the case, therefore, is identical to the situation existing in *Stanton v. Stanton,* 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975), after the Court had decided the constitutional equal protection claim made against a Utah statute.

Specifically, *Stanton* involved a period-of-minority statute which provided that males reached majority at age 21 and females at age 18. The equal protection issue was presented in the context of a divorce proceeding in which the wife was seeking continuation of child support payments by her husband for the benefit of their daughter beyond the child's 18th birthday. The Utah courts upheld the statute and denied the requested support. The Supreme Court reversed, holding that the statute violated the equal protection clause of the Fourteenth Amendment. However, the court did not order that a judgment be entered requiring payment of the requested support. Recognizing that the equal protection defect could be corrected by selecting *either* 18 *or* 21 as the age of majority for both sexes alike, the Court remanded that issue to the state courts, saying:

"The appellant asserts that, with the classification eliminated, the common law applies and that at common law the age of majority for both males and females is 21. The appellee claims that any unconstitutional inequality between males and females is to be remedied by treating males as adults at age 18, rather than by withholding the privileges of adulthood from women until they reach 21. This plainly is an issue of state law to be resolved by the Utah courts on remand; the issue was noted, incidentally, by the Supreme Court of Utah. [*Stanton v. Stanton* ], 30 Utah 2d [315], at 319, 517 P.2d [1010], at 1013. *The appellant, although prevailing here on the feder-*

al constitutional issue, may or may not ultimately win her law suit. See Harrigfeld v. District Court, 95 Idaho 540, 511 P.2d 822 (1973); Commonwealth v. Butler, Pa., 328 A.2d 851 (1974); Skinner v. Oklahoma, 316 U.S. 535, 542–543, 62 S.Ct. 1110, 1113–1114, 86 L.Ed. 1655 (1942)." (Emphasis supplied). 95 S.Ct. at 1379.

See also, Welsh v. United States, 398 U.S. 333, 361, 90 S.Ct. 1792, 1807–1808, 26 L.Ed.2d 308 (Harlan, J., concurring); and Jablon v. Secretary of HEW, supra.

■ Thus, in this case, it is apparent that the equal protection defect inherent in §§ 202(b) and 202(c) of the Act can be cured by selecting either of two remedial measures: (1) eliminating the support requirement in § 202(c)(1)(C); or (2) extending the support requirement to all derivative claimants, female as well as male. In making decisions of this nature traditional jurisprudence teaches that the Court must choose the alternative Congress would have selected had it confronted the question. See Champlain Refining Co. v. Corporation Commission, 286 U.S. 210, 234–235, 52 S.Ct. 559, 565, 76 L.Ed. 1062 (1932); National Life Insurance Co. v. United States, 277 U.S. 508, 521–522, 48 S.Ct. 591, 593–594, 72 L.Ed. 968 (1927).

■ Plaintiffs argue that Congress would choose to eliminate the support requirement because a fundamental concept of the Social Security Act is that benefits are accorded "as a matter of right," not as an act of charity, and extension of a "need" requirement would "run counter to the dominant theme of the law." The argument is unpersuasive, however, and is overbroad both generally and specifically.

An extension of the support requirement is not necessarily inconsistent with the idea that benefits are disbursed as "a matter of right." The required showing of dependency as a condition to the payment of derivative benefits does not encumber the right of an insured wage earner to the basic protection and security provided by the statute. It merely affects the size of the potential return generated by his or her contributions, and this is entirely compatible with a program in which "benefits are not necessarily related directly to tax contributions, [but are provided] in part according to presumed need." Weinberger v. Wiesenfeld, 420 U.S. 636, 647, 95 S.Ct. 1225, 1232–1233 (1975).

In any event, the exact question is whether Congress would prefer extension of the support requirement as a condition to the receipt of derivative benefits, and on this point the legislative purpose which prompted enactment of the derivative benefit program is more pertinent than the rationale underlying the Social Security Act as a whole. The statute originally provided benefits only to individuals engaged in covered employment. Congress added derivative benefits in 1939 for persons bearing specified relationships to covered workers. The amendment was prompted by a recognition that the adverse economic impact of a loss of earning capacity—the hazard against which the Social Security System was designed to protect—might not be limited solely to the worker.[7] Since one person's loss of earning capacity would adversely affect the economic welfare of another only if the latter were dependent upon the former, the conclusion is inescapable that Congress intended eligibility for derivative bene-

---

7. "The purpose of the Social Security program is to provide a continuing income for a worker and his family when the worker's earnings are cut off by his retirement in old age, his disability, or his death. To accomplish this purpose, the program provides benefits not only for the worker himself, but also for those of his relatives whom the worker normally supports or has a legal obligation to support. Benefits are provided for these relatives because they lose support, or a potential source of support, when the worker's earnings are cut off." Report of the 1971 Advisory Council on Social Security, H.Doc.No.92–80, 92d Cong., 1st Sess. (1971). See also H.R.Rep.No.728, 76th Cong., 1st Sess. (1939). Derivative benefits are currently accorded to wives, husbands, widows, widowers, parents, mothers, and children of covered workers. See 42 U.S.C. § 402.

fits to be contingent upon a status of dependency.

Reference to the overall pattern and history of the derivative benefit scheme lends further support to this view. Of the seven provisions according such benefits, five require affirmative proof of some form of dependency.[8] Moreover, although the payment of "wife's benefits" is not currently conditioned upon evidence of support, the statute originally required similar proof;[9] and the legislative history indicates that such requirement was subsequently excised, not because Congress intended to divorce derivative benefits from a condition of dependency, but for the purpose of facilitating administration by replacing the need for proof with a presumption of dependency.[10] Similarly, Congressional removal of the support test for divorced wives cannot be regarded as a disapproval of the rationale that recipients be dependent upon the wage earner. Although divorcees who continued to receive alimony from their former husbands were able to meet the support test, women with the same history of actual dependency who accepted property settlements upon dissolution of their marriages could not satisfy the requirement; and the legislative history again reveals that it was this inequity which prompted the change in the law.[11] Congress was attempting to emancipate eligibility for derivative benefits from the divergent results of legal technicalities attending dissolution of marriages, not from the practical condition of dependency.

Given this clear and repeated evidence of Congressional intent to date, the Court is of the view that reimposing the support requirement upon claimant wives would more nearly comport with that intent than would elimination of the requirement with respect to claimant husbands. If Congress were to take a fresh look at the problem, of course, it might well make the other choice (especially in view of its natural proclivity to expand rather than restrict Federal programs); but, if it did so, the decision would constitute a marked departure from the underlying historical premise on which derivative benefits have been predicated—actual or presumed dependency. Furthermore, in the process of

---

**8.** The five provisions requiring proof of dependency are the husband's, child's, widower's, mother's and parent's benefit sections. *See* 42 U.S.C. §§ 402(c)(1)(C), (d)(1)(C), (f)(1)(D), (g)(1)(E), (h)(1)(B).

**9.** As initially adopted the "wife's benefits" provision required a woman to be "living with" her husband in order to obtain benefits. *See* 42 U.S.C. § 402(b) (1940). A woman was considered "living with" her husband if: "they are both members of the same household, or she is receiving contributions from him toward her support, or he has been ordered by any court to contribute to her support." 42 U.S.C. § 409(n) (1940). That the "living with" requirement was intended to impose a condition of support and dependency is made clear by the statements that: "section 209(n) requires a determination of whether a husband was making regular contributions to his wife." S.Rep. No.1669, 81st Cong., 2d Sess. (1950), p. 63; and that: "the Act makes actual or presumed dependency on the insured individual a condition of eligibility for all dependent's and survivor's benefits." *Hearings Before a Subcommittee of the Committee of Ways and Means of the House of Representatives,* Nov. 19, 1953, p. 69.

**10.** The "living with" requirement was removed in 1957. *See* P.L. 85–238, 85th Cong., 1st Sess. (1957). In 1971, the Advisory Council on Social Security reported: "Benefits are provided for a wife or widow without a test for support because it is reasonable to presume that a wife or widow loses support, or a potential source of support, when the husband's earnings are cut off." H.Doc.No.92–80, 92nd Cong., 1st Sess. (1971).

**11.** "[A] divorced woman's eligibility for Social Security benefits may depend on the advice she received at the time of her divorce. If a woman accepted a property settlement in lieu of alimony, she could, in effect, have disqualified herself for . . . benefits." The intent of providing benefits to divorced women is to protect women whose marriages are dissolved when they are far along in years—particularly housewives who have not been able to work and earn Social Security protection of their own. The committee believes that the support requirements of the law have operated to deprive some divorced women of the protection they should have received and, therefore, recommends that these requirements be eliminated. S.Rep.No.92–1230, 93d Cong., 2d Sess. (1972), p. 142.

making that choice Congress would be forced to consider the means of funding the substantial increase in resulting disbursements; and, in this case, that factor serves to focus attention upon another reason the Court should be slow to choose a remedy significantly expanding the coverage of the Act.

The Social Security Act was passed pursuant to Article I, Section 8 of the Constitution which empowers Congress to lay and collect taxes and expend public funds for the general welfare. *Steward Machine Co. v. Davis,* 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1937). Any enlargement in the coverage of the Act, necessitating an immense increase in governmental expenditure, would effectively exercise a power reserved exclusively to Congress by the Constitution; and a judicial selection of that remedy in this case would clearly impinge upon the constitutional concept of separation of powers.[12] On the other hand, any additional expense occasioned by extension of the support requirement to all derivative claimants, while no doubt substantial, would be a part of the cost of administering the Act and would not entail the type of "spending" contemplated by Article I, Section 8.[13]

Lest it seem otherwise, the Court is conscious of the fact that much of the foregoing discussion concerning the remedy may appear to be abstract and artificially broad given the jurisdictional limitations restricting the operation of any judgment in the case to the individual claim of Mr. Moss. The payment of his claim would be simple and *de minimis* ; and not to pay it is an ironical result indeed given the success of the Plaintiffs' constitutional attack upon the statutory scheme. Nevertheless, just as the validity of the statute was determined by measuring its purposes and effects in general, it is equally appropriate to determine the correct remedy in the same broad manner although that remedy, once selected, will affect only the individual Plaintiffs and not the class they initially sought to represent.

Conversely, to the extent that the Court has determined the correct remedy to be an extension of the support requirement of the statute to all derivative beneficiaries—wives as well as husbands—candor requires admission that selection of that remedy was more easily made than would have been the case if such a determination had dictated, in turn, the issuance of an injunction governing the Secretary's future administration of the statute in general. Such an injunction, of course, would affect the status of innumerable non-parties (those applying for, or already receiving, derivative "wife's benefits"); and, for that reason, would require careful study of possible limitations or other alternatives,[14] detailed consideration of which is unnecessary in the present case.

12. *Cf. Hutcheson v. United States,* 369 U.S. 599, 622, 82 S.Ct. 1005, 1017, 8 L.Ed.2d 137 (1962): "[J]ust as the Constitution forbids the Congress to enter fields reserved to the Executive and the Judiciary, it imposes on the Judiciary the reciprocal duty of not lightly interfering with Congress' exercise of its legitimate powers."

13. The cost increase accompanying extension of the support test would result from the additional screening of wife's applications, and would be analogous to the expenditure attending imposition of a procedural requirement, such as a hearing, to satisfy due process. In *Jablon v. Secretary of HEW, supra,* the Court found the increase in administrative cost which would accompany extension of the support test—stated to be approximately one billion dollars—as a determinative factor in its decision to eliminate the support requirement. However, at oral argument before this Court, counsel for the Government stated that there was no factual basis for the one billion dollar figure, and that the reference to that sum in *Jablon* was probably the result of counsel's failure to make himself clear on this point during oral argument before that Court.

14. If such an injunction were issued the Court might, for example, make it prospective only, and inapplicable to those already receiving benefits; and, in any event, might stay or postpone the operation of the decree pending appeal and thereafter for a reasonable time to permit Congressional review and correction of the constitutional defect. *Cf. Strickland v. Burns,* 256 F.Supp. 824, 827 (M.D.Tenn.1966) (three judge court); *Long v. Avery,* 251 F.Supp. 541, 556–559 (D.Kansas 1966) (three judge court); *Drum v. Seawell,* 249 F.Supp. 877, 881–882 (M.D.N.C.1965) (three judge court), *aff'd,* 383 U.S. 831, 86 S.Ct. 1237, 16 L.Ed.2d 298 (1966).

In summary, the Court finds that simultaneous application of §§ 202(b) and 202(c) contravenes the equal protection guarantee of the due process clause of the Fifth Amendment, and that the proper remedy is to extend the support requirement of 42 U.S.C. § 402(c)(1)(C) to all derivative claimants. Since the Secretary denied benefits to Mr. Moss for failure to meet the support test, it is therefore

Ordered and adjudged that the decision of the Secretary is hereby affirmed, each party to bear its own costs.