**Anthony S. KALINA, Petitioner,**

v.

**RAILROAD RETIREMENT BOARD, Respondent.**

No. 75–2256.

United States Court of Appeals, Sixth Circuit.

Argued June 11, 1976.

Decided Sept. 13, 1976.

Charles M. Young, Sindell, Sindell, Stern & Guidubaldi, Cleveland, Ohio, for petitioner.

Dale G. Zimmerman, Gen. Counsel, Railroad Retirement Bd., Chicago, Ill., for respondent.

Before PECK and McCREE, Circuit Judges, and McALLISTER, Senior Circuit Judge.

McCREE, Circuit Judge.

This is a petition to review the Railroad Retirement Board's decision that Anthony Kalina is not entitled to a spouse's annuity under the Railroad Retirement Act of 1937, 45 U.S.C. §§ 228a—228z–1 because he did not establish that he was receiving at least one-half of his support from his wife on the date that her annuity as a retired railroad worker began. Petitioner challenged the constitutionality of section 2(f) of the Act, 45 U.S.C. § 228b(f)(ii), which defines the term "spouse,"[1] but the Board refused to consider his contention, stating that "[q]uestions of constitutionality are for the courts and not the administrative agencies to rule upon." Our jurisdiction is based upon 45 U.S.C. §§ 228k and 355(f).

We hold that § 228b(f)(ii) violates the equal protection component of the due process clause because it provides dissimilar treatment for men and women who are similarly situated, without a legally sufficient basis for the discrimination. Accordingly, petitioner Kalina is entitled to a spouse's annuity.

Petitioner's wife, Emilie Kalina, is a retired railroad employee who receives a retirement annuity pursuant to section 2(a)(1) of the Act, 45 U.S.C. § 228b(a)(1). According to her uncontroverted testimony before the Board, Mrs. Kalina began working in the railroad industry about 1920.

She married petitioner in 1969, and began receiving her annuity in 1971, shortly after the last day on which she worked in the railroad industry. She was then about 70 years of age. In her application for her annuity, Mrs. Kalina listed her position as chief clerk. In answer to the question whether her husband was dependent upon her for more than one-half of his support, she answered "no."

In 1972, petitioner filed an application for a spouse's annuity. When the Bureau of Retirement Claims determined that petitioner was not entitled to an annuity, he appealed to the Railroad Board. The evidence before the Board indicated that for many years before his marriage, petitioner lived with Mrs. Kalina, who was a distant cousin and that Mrs. Kalina maintained the home and paid its expenses without any financial help from petitioner. Petitioner, who first came to this country in 1948, is a teacher. His employment has been irregular. The Board found that in the 12 months before Mrs. Kalina began receiving her annuity, her income was approximately $7,600; while during the same period, petitioner, who had found employment as a college teacher in another state, earned about $8,400. The Board determined that petitioner had not established that he was receiving over one-half of his support from Mrs. Kalina at the time her annuity began. Accordingly it concluded that he was not entitled to a spouse's annuity.

Section 2(f) of the Railroad Retirement Act provides that the term spouse for the purposes of spouse's annuity shall mean:

(i) . . . the wife or husband of a retired annuitant . . .; and

. . . (ii) in the case of a husband, was receiving at least one-half of his support from his wife at the time his wife's annuity under subsection (a)(1) of this section began. The only change from the earlier version was the addition of a cross reference to the wife's annuity provision. The original version stated:

(ii) in the case of a husband, was receiving at least one-half of his support from his wife at the time his wife's retirement annuity or pension began.

1. The Railroad Retirement Act of 1937, 45 U.S.C. §§ 228a–228z–1, was completely revised by Pub.L. 93–445, October 16, 1974, 88 Stat. 1305, effective January 1, 1975. The revised and amended act was redesignated the Railroad Retirement Act of 1974, 45 U.S.C. §§ 231–231t. The challenged definition of a "spouse" for the purpose of a spouse's annuity was re-enacted in virtually identical language at 45 U.S.C. § 231a(c)(3)(ii):

[For purposes of this subchapter the term "spouse" shall mean the wife or husband of an annuitant . . . who . . . .]

(ii) in the case of a husband, was receiving at least one-half of his support from his wife at the time his wife's retirement annuity or pension began.

For the purpose of this appeal, petitioner does not contest the Board's determination that he was unable to prove that he received over one-half of his support from his wife at the time her annuity began. The issue before us is whether the equal protection component of the Fifth Amendment due process clause is violated by a provision requiring the spouse of a retired *female* railroad employee, but not the spouse of a retired *male* employee, to prove actual dependency in order to qualify for a spouse's annuity.

The parties have devoted much of their argument to the question whether sex is a suspect classification that requires strict scrutiny of the asserted justification for disparate treatment to avoid offending the equal protection and due process clauses. However, we find it unnecessary to reach this issue, because the Supreme Court's recent decisions in *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) and *Weinberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) control this case.

In *Frontiero*, the Court considered 37 U.S.C. §§ 401, 403 and 10 U.S.C. §§ 1072 and 1076, which required a female member of the uniformed services who sought housing and medical benefits for her spouse to prove dependency in fact (i. e., that she contributed over one-half of her husband's support), although male members of the services were not required to prove that their wives were dependent in fact in order to obtain the same benefits. The Court held that this requirement violated the due process clause of the Fifth Amendment. Four members of the Court held that sex is an inherently suspect classification, like race, alienage, and national origin. Accordingly, they subjected the challenged discrimination to "close judicial scrutiny."

The sole basis for the different treatment was the sex of the persons involved. The statute denied benefits to a female member who provided less than one-half of her spouse's support, although it granted benefits to a male member in the same circumstance. The government contended that this different treatment for men and women similarly situated was justified by "administrative convenience." However, as the plurality opinion observed, no evidence was submitted showing that this procedure was less costly than one requiring all service members to prove the dependency of their spouses. The plurality opinion held that the challenged statutes, by according different treatment to males and females similarly situated for the sole purpose of administrative convenience, violated due process, citing *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).

Justice Stewart concurred in the judgment, stating only that he agreed "that the statutes before us work an invidious discrimination in violation of the Constitution. *Reed v. Reed*, 404 U.S. 71 [92 S.Ct. 251, 30 L.Ed.2d 225]" 411 U.S. 691, 93 S.Ct. 1772.

Justice Powell, with whom the Chief Justice and Justice Blackmun concurred, found it unnecessary to determine whether sex was a suspect classification. They stated that in their view *Reed v. Reed* abundantly supported the Court's decision.[2]

More recently, in *Schlesinger v. Ballard*, 419 U.S. 498, 507, 95 S.Ct. 572, 577, 42 L.Ed.2d 610 (1975), the Court restated *Frontiero* :

In both *Reed* and *Frontiero* the challenged classifications based on sex were premised on overbroad generalizations that could not be tolerated under the Constitution. . . . In *Frontiero*, the assumption underlying the Federal Armed Services benefit statutes was that female spouses of servicemen would normally be dependent upon their husbands, while male spouses of servicewomen would not.

---

2. Justice Rehnquist dissented "for the reasons stated by Judge Rives in his opinion for the

District Court, *Frontiero v. Laird*, 341 F.Supp. 201 (1972)." 411 U.S. 691, 93 S.Ct. 1773.

Later in the same year, the Supreme Court invalidated 42 U.S.C. § 402(g), which provided that Social Security survivors' benefits based on the earnings of a deceased *husband* and father were payable *both* to the couple's minor children and to the widow, although benefits based upon the earnings of a deceased *wife* and mother were payable only to the couple's minor children, and *not* to the widower. In *Weinberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975)[3] the Court held that the

> gender-based distinction made by § 402(g) is indistinguishable from that invalidated in *Frontiero v. Richardson*, 411 U.S. 677 [93 S.Ct. 1764, 36 L.Ed.2d 583] (1973). *Frontiero* involved statutes which provided the wife of a male serviceman with dependents' benefits but not the husband of a servicewoman unless she proved that she supplied more than one-half of her husband's support. The Court held that the statutory scheme violated the right to equal protection secured by the Fifth Amendment. *Schlesinger · v. Ballard*, 419 U.S. 498 [95 S.Ct. 572, 42 L.Ed.2d 60] (1975), explained: "In . . . *Frontiero* the challenged [classification] based on sex [was] premised on overbroad generalizations that could not be tolerated under the Constitution. . . . [T]he assumption . . . was that female spouses of servicemen would normally be dependent upon their husbands, while male spouses of service-

women would not." *Id.*, at 507 [95 S.Ct. at 577]. A virtually identical "archaic and overbroad" generalization, *id.*, at 508 [95 S.Ct. 572], "not . . . tolerated under the Constitution" underlies the distinction drawn by § 402(g), namely, that male workers' earnings are vital to the support of their families, while the earnings of female wage earners do not significantly contribute to their families' support. [Footnote omitted.] 420 U.S. 642–643, 95 S.Ct. 1230.

The Court observed that although the assumption that men are more likely than women to be the primary supporters of their families "is not entirely without empirical support," nevertheless,

> such a gender-based generalization cannot suffice to justify the denigration of the efforts of women who do work and whose earnings contribute significantly to their families' support. 420 U.S. 645, 95 S.Ct. 1232.

The Court rejected the argument that the noncontractual nature of Social Security benefits permitted Congress to provide a covered female employee with fewer benefits than it provided for a covered male. It also rejected the contention that the classification under attack was one "reasonably designed to compensate women beneficiaries as a group for the economic difficulties which still confront women who seek to support themselves and their families." 420 U.S. 648, 95 S.Ct. 1233. The Court held

---

**3.** Justice Douglas took no part in the case.

Justice Powell wrote a separate concurring opinion, in which Chief Justice Burger joined, to "identify the impermissible discrimination effected by § 402(g) somewhat more narrowly than the Court does." 420 U.S. 654, 95 S.Ct. 1236. Justice Powell emphasized that the statute "impermissibly discriminates against a female wage earner because it provides her family less protection than it provides that of a male wage earner, even though the family needs may be identical." He concluded that "no legitimate governmental interest supports this gender classification." 420 U.S. 654–655, 95 S.Ct. 1236. He emphasized the fact that Social Security is designed for the protection of the "family," and although it lacks a contractual basis, it is a contributory system. Likewise the railroad retirement program is a contributo-

ry system which is designed to protect the worker and his family, and no legitimate governmental interest supports the practice of providing Mrs. Kalina's family less protection than is provided for the family of a male employee.

Justice Rehnquist concurred separately in order to emphasize that analysis of the legislative history and statutory context of § 402(g) "establishes that the Government's proffered legislative purpose is so totally at odds with the context and history of § 402(g) that it cannot serve as a basis for judging whether the statutory distinction between men and women rationally serves ·a valid legislative objective." 420 U.S. 655, 95 S.Ct. 1237. Accordingly, Justice Rehnquist found it unnecessary to reach the issue whether the statute "violates the Fifth Amendment as applied in *Frontiero v. Richardson* . . . ." 420 U.S. 655, 95 S.Ct. 1237.

that "the mere recitation of a benign, compensatory purpose is not an automatic shield which protects against any inquiry into the actual purposes underlying a statutory scheme." 420 U.S. 648, 95 S.Ct. 1233. The Court reasoned that "[g]iven the purpose of enabling the surviving parent to remain at home to care for a child, the gender-based distinction of 402(g) is entirely irrational." 420 U.S. 651, 95 S.Ct. 1235.

The Court concluded:

Since the gender-based classification of § 402(g) cannot be explained as an attempt to provide for the special problems of women, it is indistinguishable from the classification held invalid in *Frontiero.* Like the statutes there, "[b]y providing dissimilar treatment for men and women who are . . . similarly situated, the challenged section violates the [Due Process] Clause." *Reed v. Reed,* 404 U.S. 71, 77 [92 S.Ct. 251, 254, 30 L.Ed.2d 225] (1971). 420 U.S. 653, 95 S.Ct. 1236.

The same reasoning applies here. The legislative history of the provision of the Railroad Retirement Act challenged here suggests no reason for the discriminatory treatment of male and female employees with respect to the spouse's annuity. The House Committee omitted a spouse's annuity that had been proposed in an earlier draft of H.R. 3669 because the provision was considered too controversial. The Committee Report stated that the spouse's annuity was "opposed as being unfair to unmarried men." 1951 Code Cong. & Admin.Service, pp. 2536–2537. It is also observed that the actuarial evidence regarding the effect on the fund was conflicting. 1951 Code Cong. & Admin.Service, p. 2537. The Senate version of the bill, however, included a spouse's annuity provision, and the Conference Committee Report merely states,

The Senate amendment to the text of the bill provided an annuity for the widower of a deceased railroad employee, where such widower had attained 65 years of age and had been receiving at least one-half of his support from his wife employee at the time of her retirement or death.

The bill as passed [sic] the House contained no such provision. The conference substitute follows the language of the Senate amendment in this respect. 1951 Code Cong. & Admin.Service, p. 2557.

The legislative history also discloses that the annuity was added as part of an extensive revision of the Railroad Retirement Act intended to increase benefits to meet the "desperate" and "urgent" needs of "retired workers *and their families."* 1951 Code Cong. & Admin.Service, p. 2529. [Emphasis added.] Congress sought to increase the benefits to a level at least equal to that of Social Security benefits, because railroad employees contributed at a higher rate than the employees covered by Social Security. The Railroad Retirement Board, which supported H.R. 3669, provided an analysis of the challenged provision:

The new subsection (g) defines "spouse" . . . .. If the spouse is the husband of the employee he must have been receiving at least one-half of his support from his wife at the time her annuity or pension began.

*The term "spouse" is defined in the same terms as husband and wife, respectively, under the Social Security Act,* except that under the Railroad Retirement Act the husband is not required to file proof of support within any specific period of time. Hearings on H.R. 3669 before the Committee on Interstate and Foreign Commerce, 82nd Cong., 1st Sess., 66 (1951). [Emphasis added.]

The Board argues that the purpose of the spouse's annuity was to provide increased benefits "in cases of greatest need, that is to say where two people must live on the benefits provided under the Railroad Retirement Act." H.R.Rep.No.976, 82nd Cong., 1st Sess. at H.R. 3669 (1951). The Board concludes that "[a]lthough the legislative history of section 2(f)(ii) does not expressly state that one of the goals to be achieved by its enactment would be to partially redress economic discrimination practiced against women, that purpose is implicit in the stated legislative purpose of providing added security for married couples."

The Board contends that Congress concluded that the wife of a male railroad employee was less likely to have been engaged in employment that would yield a substantial income and adequate retirement benefits than was the husband of a female employee. The Board cites a large body of statistics to demonstrate that in 1950, women in the American work force were paid substantially lower wages than men, and that this disparity has continued until the present.

Although women have been and continue to be at a disadvantage in the labor market, as the Supreme Court observed in *Weinberger*, "the mere recitation of a benign compensatory purpose" is no justification for a statutory scheme that imposes yet another and different sex-based discrimination. It is clear that the primary legislative purpose in enacting the spouse's annuity provision was to increase benefits to retired workers *and their families.* As often happens in legislative drafting, the challenged term "spouse," which conclusively presumed that the wife of a male employee was dependent, but required the husband of a female employee to prove dependency in fact, was simply borrowed from the Social Security Act. It is not unreasonable to conclude that when Congress adopted the Social Security Act definition that resulted in the discriminatory treatment of female employees it embraced the "archaic and overbroad generalization" that "male workers' earnings are vital to the support of their families, while the earnings of female wage-earners do not significantly contribute to their families' support" that the Supreme Court rejected in *Weinberger v. Wiesenfeld*, 420 U.S. 636, 643, 95 S.Ct. 1225. *Frontiero* and *Weinberger* make it clear that this generalization may not be relied upon to "denigrate the efforts" of women, like Mrs. Kalina, who work and whose earnings contribute significantly to the support of their families. Moreover, since the purpose of the spouse's annuity was to provide a desperately and urgently needed increase in the benefits paid to railroad workers and their families, the gender-based distinction challenged here, like those in *Frontiero* and *Weinberger*, is "entirely irrational."

Moreover, each of the four courts that have considered challenges to the analogous section of the Social Security Act, 42 U.S.C. § 402(c)(1)(C), have also concluded that the discrimination in that section violated the equal protection component of the Due Process Clause. *Silbowitz v. Secretary of H.E.W.*, 397 F.Supp. 862 (S.D.Fla.1975), U.S.App. pending, 44 U.S.L.W. 3352; *Coffin v. Secretary of H.E.W.*, 400 F.Supp. 953 (D.D.C.1975), U.S.App. pending, 44 U.S. L.W. 3375, 3386; *Jablon v. Secretary of H.E.W.*, 399 F.Supp. 118 (D.Md.1975), U.S. App. pending, 44 U.S.L.W. 3364; *Moss v. Secretary of H.E.W.*, 408 F.Supp. 403 (M.D. Fla.1976). Section 402(c)(1)(C) provides that a husband of an individual entitled to old age or disability insurance is entitled to "a husband's insurance benefit" if he has filed an application, has attained the age of 62 and "was receiving at least one-half of his support, as determined in accordance with regulations prescribed by the Secretary, from such individual . . . ." In *Silbowitz*, for example, Chief Judge Fulton analyzed *Frontiero* and *Wiesenfeld*, and concluded:

> Section 402(c)(1)(C) is the product of an identical stereotype: all women are dependent upon their husbands for their support. Thus, under § 402(b) all otherwise qualified wives of wage earners will receive benefits, irrespective of their dependency. Husbands are disqualified unless they are dependent. The discrimination is not related to family needs. Women who had no need of their husband's income receive benefits and enlarge the fund available to support husband and wife in their old age. Similarly situated husbands are denied benefits and the amounts available to meet the needs of those husbands and wives are less. Identically situated people are accorded different treatment solely on the basis of their sex.

> Like the statutes in *Frontiero* and *Wiesenfeld*, § 402(c)(1)(C), "'[b]y providing dissimilar treatment for men and women who are . . . similarly situ-

ated, the challenged section violates the [Due Process] Clause' *Reed v. Reed*, 404 U.S. 71, 77, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971)." *Weinberger v. Wiesenfeld*, 420 U.S. 653, 95 S.Ct. at 1236. 397 F.Supp. 866.

Judge Fulton also rejected the government's contention that the statutory scheme was rationally connected with the Act's intention to provide benefits to those persons with the greatest needs:

> It is obvious that the statutes (§§ 402(b) and 402(c)(1)(C)) do not accomplish that purpose. Wealthy wives become entitled to benefits regardless of their dependency. Economically independent wives receive benefits without regard to their need. Indeed, if the public fisc is the concern, then a rational statute would require both male and female spouses to show dependency. The defendant's reliance upon *Geduldig* [*Geduldig v. Aiello*, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256], is misplaced. While that case recognized the allocation of resources as a legitimate state interest, it did so in the context of a claim that women should be entitled to California state disability insurance benefits for pregnancy. In this case Mrs. Silbowitz is not seeking a benefit which, by its nature, is limited to women. Unlike the plaintiff in *Geduldig* she, as a covered worker, has paid for a benefit which a male would receive. The conservation of fiscal resources cannot be accomplished "by drawing invidious classifications." *Miller v. Laird*, 349 F.Supp. 1034, 1046 (3 judge ct. D.C.1972); *Diaz v. Weinberger*, 361 F.Supp. 1, 11 (3 judge ct. S.D.Fla. 1973) (Set for reargument in the Supreme Court, 420 U.S. 959, 95 S.Ct. 1346, 43 L.Ed.2d 436). 397 F.Supp. 867.

Accordingly, he held that the grant of benefits to wives, but not to husbands, without a

showing of dependency, served only administrative convenience, and that this purpose was insufficient to avoid a violation of due process.

### Remedy

■ Since we hold that the different treatment of similarly situated male and female railroad employees (and derivatively, their spouses) violates due process, the only remaining question is the proper remedy. The Board suggests that we should not adopt a remedy that would impose additional costs on the overburdened retirement fund, a result that it predicts will follow a holding that Mr. Kalina (and, by implication, the husbands of other railroad workers) is entitled to a spouse's annuity without regard to proof of dependency. Instead, the Board suggests that we should hold that all spouses, female as well as male, of railroad employees must prove that they are dependent in fact in order to qualify for a spouse's annuity. This result would be contrary to the considered decision of Congress that spouses of male railroad workers are to be conclusively presumed dependent. And courts cannot disregard the directions of Congress so long as they are constitutional.[4] It would be incongruous if in adopting a remedy for a constitutional violation by the legislature we were to engage in improper judicial conduct.[5] The Board should address its concern for the solvency of the retirement fund to Congress, which, if persuaded, may in its judgment require all spouses to prove dependency in fact, or even eliminate the spouse's annuity entirely.

The decision of the Railroad Retirement Board is reversed and the case is remanded for a determination of the amount of annuity benefits due to petitioner without regard to section 2(f)(ii) of the Act. Petitioner shall receive the costs of this review.

---

**4.** *But see Moss v. Secretary of H.E.W.*, 408 F.Supp. 403 (M.D.Fla.1976).

**5.** Accordingly, we do not reach the subsidiary questions raised by the Board's argument, such as whether it would be necessary for all those

wives of railroad employees who have already received spouse's annuities to prove that they were dependent in fact when their husbands' annuities began, and, if they are unable to do so, whether they should be required to repay the annuities received.